JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

## I.(a) PLAINTIFFS

SEIU UNITED HEALTHCARE WORKERS - WEST

## DEFENDANTS

ST. LUKE'S HOSPITAL

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Unknown
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

W. Daniel Boone, Esq. Weinberg, Roger & Rosenfeld, 1001 Marina Village Parkway, Ste. 200, Alameda, CA 94501-1091

ATTORNEYS (IF KNOWN)

F. Curt Kirschner, Christopher T. Scanlan and Erendira E. Rubin O'Melveny & Myers, 275 Battery St. #2600 S.F., CA 94111-3344

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ Original Proceeding
- ☒ Removed from State Court
- ☐ Remanded from Appellate Court
- ☐ Reinstated or Reopened
- ☐ Transferred from Another district (specify)
- ☐ Multidistrict Litigation
- ☐ Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury Medical Malpractice | ☐620 Other Food & Drug | ☐423 Withdrawal 28 USC 157 | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product Liability | ☐365 Personal Injury Product Liability | ☐625 Drug Related Seizure of Property 21 USC 881 | | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | ☐320 Assault Libel & Slander | ☐368 Asbestos Personal Injury Product Liability | ☐630 Liquor Laws | **PROPERTY RIGHTS** | ☐450 Commerce/ICC Rates/etc. |
| ☐150 Recovery of Overpayment & Enforcement of Judgment | ☐330 Federal Employers Liability | | ☐640 RR & Truck | ☐820 Copyrights | ☐460 Deportation |
| ☐151 Medicare Act | ☐340 Marine | **PERSONAL PROPERTY** | ☐650 Airline Regs | ☐830 Patent | ☐470 Racketeer Influenced and Corrupt Organizations |
| ☐152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐345 Marine Product Liability | ☐370 Other Fraud | ☐660 Occupational Safety/Health | ☐840 Trademark | ☐480 Consumer Credit |
| | ☐350 Motor Vehicle | ☐371 Truth in Lending | ☐690 Other | | ☐490 Cable/Satellite TV |
| ☐153 Recovery of Overpayment of Veteran's Benefits | ☐355 Motor Vehicle Product Liability | ☐380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐810 Selective Service |
| ☐160 Stockholders Suits | ☐360 Other Personal Injury | ☐385 Property Damage Product Liability | ☐710 Fair Labor Standards Act | ☐861 HIA (1395ff) | ☐850 Securities/Commodities/Exchange |
| ☐190 Other Contract | | | ☒720 Labor/Mgmt Relations | ☐862 Black Lung (923) | ☐875 Customer Challenge 12 USC 3410 |
| ☐195 Contract Product Liability | | | ☐730 Labor/Mgmt Reporting & Disclosure Act | ☐863 DIWC/DIWW (405(g)) | ☐891 Agricultural Acts |
| ☐196 Franchise | | | ☐740 Railway Labor Act | ☐864 SSID Title XVI | ☐892 Economic Stabilization Act |
| | | | ☐790 Other Labor Litigation | ☐865 RSI (405(g)) | ☐893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐791 Empl.Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐894 Energy Allocation Act |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motion to Vacate Sentence Habeas Corpus: | | ☐870 Taxes (US Plaintiff or Defendant | ☐895 Freedom of Information Act |
| ☐220 Foreclosure | ☐442 Employment | ☐530 General | | ☐871 IRS - Third Party 26 USC 7609 | ☐900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐230 Rent Lease & Ejectment | ☐443 Housing | ☐535 Death Penalty | | | |
| ☐240 Torts to Land | ☐444 Welfare | ☐540 Mandamus & Other | | | ☐950 Constitutionality of State Statutes |
| ☐245 Tort Product Liability | ☐440 Other Civil Rights | ☐550 Civil Rights | | | ☐890 Other Statutory Actions |
| ☐290 All Other Real Property | ☐445 Amer w/ disab - Empl | ☐555 Prison Condition | | | |
| | ☐446 Amer w/ disab - Other | | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Removed from State Court pursuant to 28 U.S.C. Section 1331 and 1441.

## VII. REQUESTED IN COMPLAINT: ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE."

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE  12/3/07     SIGNATURE OF ATTORNEY OF RECORD   *Eréndira E. Rubin*

1  F. CURT KIRSCHNER, JR. (S.B. #122502)
   CHRISTOPHER T. SCANLAN (S.B. #211724)
2  ERENDIRA E. RUBIN (S.B. #247299)
   O'MELVENY & MYERS LLP
3  Embarcadero Center West
   275 Battery Street
4  San Francisco, CA 94111-3344
   Telephone:   (415) 984-8700
5  Facsimile:   (415) 984-8701                    E-filing

6  Attorneys for Respondent
   St. Luke's Hospital

7

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA          WHA

10

11

12  SEIU, UNITED HEALTHCARE              Case No.
    WORKERS – West,
13                                       NOTICE OF REMOVAL BY
                      Petitioner,        RESPONDENT ST. LUKE'S
14                                       HOSPITAL
        v.
15                                       (28 U.S.C. §§ 1331 and 1441(a) and
    ST. LUKE'S HOSPITAL                  (b))
16
                                         (San Francisco County Superior
17                    Respondents.       Court, Case No. CPF-07-507800)

18

19  TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT

20  FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PETITIONER'S

21  COUNSEL OF RECORD:

22        Pursuant to 28 U.S.C. § 1446, respondent St. Luke's Hospital ("St. Luke's") hereby

23  invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1441(a)

24  and (b) and removes to this Court the state-court action described below on the grounds of

25  federal question jurisdiction.

26                        DESCRIPTION OF ACTION

27        1.    This removal involves a petition to compel arbitration initiated by SEIU

28  United Healthcare Workers – West ("Petitioner" or "SEIU") in the California Superior

- 1 -                    ST. LUKE'S HOSPITAL'S NOTICE OF
                                                      REMOVAL

1    Court for the City and County of San Francisco, entitled *SEIU United Healthcare Workers*

2    *– West v. St. Luke's Hospital*, Case No. CPF-07-507800, to enforce an arbitration

3    provision contained within a collective bargaining agreement between the parties.

4         2.    The basis of SEIU's petition to compel arbitration is that – under applicable

5    federal labor law – St. Luke's is required to arbitrate the underlying grievance that forms

6    the basis of the arbitration demand, *i.e.*, that the employer violated the parties' Tentative

7    Agreement to their Collective Bargaining Agreement by closing the Outpatient Pharmacy.

8         3.    A true copy of SEIU's petition to compel arbitration, filed on November 2,

9    2007, is annexed as Exhibit A.

10         4.    A true copy of the answer filed by St. Luke's on November 13, 2007 is

11    annexed as Exhibit B.

12         5.    Undersigned counsel has not been served with any other pleadings or papers

13    in this matter.

14                 **SERVICE AND TIMELY REMOVAL**

15         6.    The Petitioner delivered by messenger its petition to compel arbitration and

16    supporting documents on St. Luke's Hospital on November 6, 2007. Accordingly, this

17    Notice of Removal has been properly and timely filed. 28 U.S.C. § 1446(b).

18             **JURISDICTION AND BASIS FOR REMOVAL**

19         7.    Pursuant to 28 U.S.C. § 1331, United States district courts shall have

20    original jurisdiction of all civil actions arising under the laws of the United States.

21         8.    SEIU's Petition to Compel will be based on the Labor Management

22    Relations Act, 29 U.S.C. §§ 151 *et seq.*, and determined by application of substantive

23    federal law.

24         9.    Pursuant to 28 U.S.C. §§ 1331 and 1441(a) and (b), SEIU's state-court

25    action may properly be removed to the United States district courts because there is

26    federal question jurisdiction over this matter. *See, e.g., Iron Workers, Dist. Council of the*

27    *State of California v. Flory Const. Co., Inc.*, No. C-80-2922, 1980 U.S. Dist. LEXIS

28    15056, at *1 (N.D. Cal. Oct. 24, 1980); *Lesser Towers v. Roscoe Ajax Const., Co.*, 258 F.

<div align="center">- 2 -</div>

<div align="right">ST. LUKE'S HOSPITAL'S NOTICE OF<br>REMOVAL</div>

1    Supp. 1005, 1011-12 (S.D. Cal. 1966).

2        10.    Pursuant to 28 U.S.C. §§ 84 and 1446(a), (b) and (d), SEIU's action, which

3    was commenced in the Superior Court of the State of California, County of San Francisco,

4    may be removed to this District Court, being the United States District Court for the

5    Northern District of California, which embraces the City and County of San Francisco

6    within its jurisdiction.

7                                    **VENUE**

8        11.    Venue is proper in this district because the California Superior Court for the

9    City and County of San Francisco is located within the federal Northern District of

10   California. Therefore, venue is proper pursuant to 28 U.S.C. § 84(a) because this is the

11   "district and division embracing the place where such action is pending." 28 U.S.C.

12   § 1441(a).

13       12.    With respect to intradistrict venue, this action should be assigned by the

14   Clerk to the San Francisco or Oakland Division because it arose in the City and County of

15   San Francisco.

16       Dated:  December 3, 2007              F. CURT KIRSCHNER, JR.
                                               CHRISTOPHER T. SCANLAN
17                                             O'MELVENY & MYERS LLP

18

19                                     By: *Eréndira E. Rubin*

20                                          Erendira E. Rubin
                                            Attorneys for Respondent
21                                          St. Luke's Hospital

22   SF1:694372.1

23

24

25

26

27

28

## PROOF OF SERVICE BY MAIL

I am over the age of eighteen years and not a party to the within action. I am employed in the county where the service described below occurred. My business address is 2765 Sand Hill Road, Menlo Park, California 94025. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence collected from me would be processed on the same day, with postage thereon fully prepaid and placed for deposit that day with the United States Postal Service. On December 3, 2007, I served the following:

**NOTICE OF REMOVAL BY RESPONDENT ST. LUKE'S HOSPITAL**

by putting a true and correct copy thereof in a sealed envelope, with postage fully prepaid, and placing the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

> William A. Sokol, Esq.
> Bruce Harland, Esq.
> Weinberg, Roger & Rosenfeld
> 1001 Marina Village Parkway,
> Suite 200
> Alameda, CA 94501-1091

Executed on December 3, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Lupe C. Austin

ST. LUKE'S HOSPITAL'S NOTICE OF
REMOVAL

# EXHIBIT A

1  W. DANIEL BOONE, Bar No. 046553
   WEINBERG, ROGER & ROSENFELD
2  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
3  Alameda, California 94501-1091
   Telephone 510.337.1001
4  Fax 510.337.1023

5  Attorneys for Petitioner

**ORIGINAL FILED**

San Francisco County Superior Court

NOV 2 2007

GORDON PARK-LI, Clerk
By: _____
Deputy Clerk

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SAN FRANCISCO

10                        UNLIMITED JURISDICTION

11
    SEIU UNITED HEALTHCARE WORKERS       )  Case No. **CPF-07-507800**
12  WEST,                                )
                                         )  PETITION TO COMPEL ARBITRATION
13              Petitioner,              )
                                         )
14        v.                             )
                                         )
15  ST. LUKE'S HOSPITAL OF SAN           )
    FRANCISCO,                           )
16                                       )
                Respondent.              )
17  _____)

18  TO:    THE HONORABLE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND
19         FOR THE ABOVE ENTITLED COUNTY

20         The Petition of Petitioner for an Order Compelling Arbitration respectfully shows:

21         1.      Petitioner is a labor organization doing business in the State of California and is a

22  voluntary, unincorporated association existing under and pursuant to the laws of the State of

23  California. Petitioner exists in part for the purpose of providing standards of wages, hours, and

24  working conditions, and negotiating and executing collective bargaining agreements on behalf of

25  employees in an appropriate collective bargaining unit.

26         2.      Respondent, ST. LUKE'S HOSPITAL OF SAN FRANCISCO is an employer

27  within the meaning of the Labor-Management Relations Act of 1947 (29 U.S.C. §151 et seq.) and

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

PETITION TO COMPEL ARBITRATION

1   employs members of Petitioner.

2       3.     At all times material herein, Petitioner and Respondents, and each of them, have

3 been parties to a written collective bargaining agreement to which each of the parties is bound. A

4 copy of said collective bargaining agreement is attached hereto, labeled "Exhibit A," and

5 incorporated herein by reference.

6       4.     Since on or about August 2007 a dispute has existed over the interpretation and/or

7 application of the collective bargaining agreement in that there has been and continues to be a

8 grievance presenting the following issue: Whether or not the Employer was authorized to

9 subcontract outpatient pharmacy to Walgreen's. If not, what is the appropriate remedy? A copy of

10 said grievance is attached hereto, labeled Exhibit "B," and incorporated herein by reference.

11       5.     Article XI of the collective bargaining agreement provides for a grievance

12 procedure wherein the parties are bound to submit all disputes to an arbitrator, empowered to make

13 final and binding decisions.

14       6.     Since on or about September 28, 2007, and continuing to date, Petitioner has been

15 willing and has sought to refer the dispute referred to above to arbitration, in accordance with the

16 grievance and arbitration procedures of "Exhibit A." Respondents, and each of them, have refused

17 and continue to refuse to submit the outstanding dispute to arbitration as required by the collective

18 bargaining agreement.

19       7.     At all times material herein, Petitioner has complied with all the terms and

20 conditions of said collective bargaining agreement, but Respondents, and each of them, have failed

21 and refused to so comply, and still so fail and refuse to comply, with the said grievance and

22 arbitration provisions of the agreement, or to submit the dispute for resolution pursuant to the

23 provisions of said grievance and arbitration provisions.

24     WHEREFORE, Petitioner prays that an Order of this Court be made pursuant to the

25 provisions of Code of Civil Procedure §1281 et seq. ordering Respondents, and each of them, to

26 submit the outstanding dispute to the grievance and arbitration procedures set forth in the

27 provisions of the collective bargaining agreement referred to herein, and to otherwise comply with

28 the grievance and arbitration procedures required by said agreement as set forth therein; for

'EINBERG, ROGER &
ROSENFELD
Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 2 -

1  reasonable attorneys' fees; for costs of suit; and for such other and further relief as to the Court may

2  seem just and proper.

3  Dated: October _3/_, 2007

4

5  WEINBERG, ROGER & ROSENFELD
   A Professional Corporation

6

7  By: _W. Daniel Boone_
   W. DANIEL BOONE
   Attorneys for Petitioner

8  117243/474082

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFICATION

I am one of the attorneys for SEIU UNITED HEALTHCARE WORKERS WEST, in the above entitled action. I have read the foregoing document, and know the contents thereof; and I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information or belief, and as to those matters, I believe them to be true.

I make this verification as attorney and agent for SEIU UNITED HEALTHCARE WORKERS WEST, with authority to make said verification and because as attorney the facts set forth in said document are within my knowledge and I am more familiar with such facts. I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Executed on October 3/, 2007 at Alameda, California.

W. DANIEL BOONE

117243/474082

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

- 4 -
PETITION TO COMPEL ARBITRATION

[illegible] CARE WORKERS
UNION LOCAL 250, AFL-CIO
560 – 20th STREET
OAKLAND, CA 94612
(510) 251-1250/800-585-4250
www.seiu250.org

# COLLECTIVE BARGAINING AGREEMENT

WITH

ST. LUKE'S HOSPITAL OF SAN FRANCISCO

EFFECTIVE
JULY 1, 2001
THROUGH
JUNE 30, 2004

## FOREWORD

This Agreement is the result of many long, hard hours of collective bargaining between your Employer and the negotiating committee members from your facility. Our success at the bargaining table is directly related to the degree of strength, commitment, and unity achieved among our members. Our rights, our benefits, and our working conditions must never be taken for granted; we have had to fight for everything that we have achieved. We must work to ensure that this contract is enforced each and every day!

Union members should feel free to contact their shop steward at any time concerning any matter within the scope of this contract or any other work-related problems. Stewards are the key to building a strong, democratic labor union.

In addition, the Union's professional staff is available to help support the needs of our stewards in addressing worksite problems and concerns.

Working in health care is a very difficult and demanding job. The quality of care that you provide, as well as your concern and dedication to your patients, make you very special people. Your Union, Health Care Workers' Union, SEIU Local 250, is one of the largest health care unions in the United States, and the largest health care union in California, with over 60,000 members.

Enforcing and defending our contract in organized facilities is only one part of building a stronger Local 250. Organizing the unorganized workers is another. Local 250 will continue its tradition of aggressively organizing the rapidly growing industry. New organizing is the key to keeping our Union strong by bringing the gains that we have achieved to those workers who do not have the protection of a union contract.

Another key to improving the wages and working conditions of workers is to continue our program of legislative action in coalition with other groups in the community, including other health care unions.

Union staff can be contacted at the office of the Health Care Workers' Union listed on the cover of this contract. Local 250's headquarters is located at 560-20th Street, Oakland, California, 94612. The phone number there is (510) 251-1250 or (800) 585-4250. Our San Francisco Office phone number is (415) 441-2500.

In Unity,

*Sal Rosselli*

Sal Rosselli, President

*Joan Emslie*

Joan Emslie, Secretary-Treasurer

i

# Contract Index

| TOPIC | | PAGE |
|---|---|---|
| ARTICLE I | RECOGNITION OF UNION AND EXCLUSIONS AND MANAGEMENT RIGHTS | 1 |
| Section 1 | Recognition of Union and Exclusions | 1 |
| Section 2 | Management Rights | 2 |
| Section 3 | Organizing at St. Luke's Hospital | 2 |
| | | |
| ARTICLE II | EQUAL EMPLOYMENT OPPORTUNITIES | 6 |
| Section 1 | Discrimination | 6 |
| Section 2 | Equal Pay | 6 |
| | | |
| ARTICLE III | UNION MEMBERSHIP | 7 |
| Section 1 | Union Membership Requirements | 7 |
| Section 2 | Notice to New Employees | 7 |
| Section 3 | Deduction of Union Membership Fees | 8 |
| Section 4 | Committee on Political Education | 9 |
| Section 5 | Bulletin Boards | 9 |
| | | |
| ARTICLE IV | CATEGORIES OF EMPLOYEES | 10 |
| Section 1 | Employee Categories Described | 10 |
| Section 2 | Category Reclassification | 11 |
| Section 3 | Distribution of Casual Work | 13 |
| Section 4 | Distribution of Overtime | 15 |
| | | |
| ARTICLE V | SENIORITY AND JOB VACANCIES | 16 |
| Section 1 | Probationary Period | 16 |
| Section 2 | Commencement/Termination of Seniority | 17 |
| Section 3 | Job Vacancies, Posting and Bidding | 18 |
| Section 4 | Reduction in Force and Recall | 21 |
| Section 5 | Consolidation of Clerical Job Functions | 25 |
| Section 6 | Definition of Department | 26 |
| Section 7 | Bumping | 28 |
| | | |
| ARTICLE VI | CLASSIFICATION AND WAGES | 28 |
| Section 1 | Schedule of Wages | 28 |
| Section 2 | Payday | 28 |

iii

# Contract Index (Cont'd)

| TOPIC | | PAGE |
|---|---|---|
| ARTICLE IX | FIELD REPRESENTATIVES AND SHOP STEWARDS | 60 |
| Section 1 | Field Representative's Rights | 60 |
| Section 2 | Shop Stewards | 61 |
| Section 3 | Employee Representatives of Union Negotiation Committee | 62 |
| Section 4 | Weingarten Rule | 63 |
| Section 5 | Corrective Actions | 63 |
| ARTICLE X | COMPLAINTS | 63 |
| ARTICLE XI | GRIEVANCE PROCEDURE | 64 |
| Section 1 | Employee Grievance | 64 |
| Section 2 | Time Limits | 66 |
| Section 3 | Power of Arbitrator | 66 |
| Section 4 | Employee's Personnel Files | 67 |
| Section 5 | Employee Participation | 67 |
| ARTICLE XII | NO WORK STOPPAGE | 67 |
| ARTICLE XIII | LABOR MANAGEMENT COMMITTEE | 68 |
| ARTICLE XIV | JOB SECURITY | 69 |
| Section 1 | No Subcontracting | 69 |
| Section 2 | Mergers, Sales, Closures and Transfers | 69 |
| Section 3 | Laid Off Workers | 70 |
| Section 4 | Career Development Opportunities | 7- |
| ARTICLE XV | PATIENT CARE COMMITTEE | 73 |
| Section 1 | Establishment of Committee | 73 |
| Section 2 | Patient Review Committee | 74 |
| Section 3 | Moderator's Non-Binding Written Recommendation | 75 |
| ARTICLE XVI | TERM OF AGREEMENT | 77 |
| APPENDIX A | Footnotes To Appendix A | 79 |
| APPENDIX A | Bargaining Unit Positions By Classification | 81 |
| APPENDIX A | St. Luke's Wage Schedule | 83 |

| Section 3 | Progression Schedule | 29 |
|---|---|---|
| Section 4 | Premium Conditions | 30 |
| Section 5 | Job Descriptions and Job Classifications | 31 |
| Section 6 | Uniforms | 32 |
| Section 7 | Meals | 32 |
| Section 8 | Standby Pay | 32 |
| Section 9 | Evaluation of Employees | 33 |
| Section 10 | Temporary Work in A Higher Paid Classification | 33 |
| ARTICLE VII | HOURS OF WORK | 34 |
| Section 1 | Employee Work Schedules and Overtime | 34 |
| Section 2 | Rest Between Shifts | 35 |
| Section 3 | Shift Definition and Premiums | 36 |
| Section 4 | Reporting Pay | 37 |
| Section 5 | Payment in Lieu of Fringe Benefits | 38 |
| Section 6 | Rest Periods | 38 |
| Section 7 | Weekend Work | 39 |
| Section 8 | Shift Rotation | 41 |
| Section 9 | Additional Shifts Premium | 41 |
| Section 10 | Mandatory Overtime | 41 |
| ARTICLE VIII | EMPLOYEE BENEFITS | 42 |
| Section 1 | Vacations | 42 |
| Section 2 | Sick Leave | 45 |
| Section 3 | Holidays | 48 |
| Section 4 | Bereavement Leave | 51 |
| Section 5 | Jury Duty Pay | 51 |
| Section 6 | Accrual | 52 |
| Section 7 | Leave of Absence | 52 |
| Section 8 | Group Health, Dental and Vision Benefits | 54 |
| Section 9 | Group Life Insurance | 55 |
| Section 10 | Retirement Plan | 55 |
| Section 11 | Flexible Spending Account Program/Salary Reduction for Dependent Care | 56 |
| Section 12 | Physical Examinations | 56 |
| Section 13 | Job Related Education Leave and In-Service Education | 59 |
| Section 14 | Safety | 59 |
| Section 15 | Military Leave | 60 |

| APPENDIX B | LVN II Clinical Ladder Review Board | 87 |
| APPENDIX C | LPT II Clinical Ladder Review Board | 88 |
| APPENDIX D | Surgical Technician Clinical Ladder | 89 |
| APPENDIX E | PBX Supervisor | 91 |
| APPENDIX E | Twelve (12) Hour Shifts | 91 |
| APPENDIX F | Health Plan Schedule of Benefits | 92 |
| APPENDIX G | Pension | 95 |
| APPENDIX G | List of Non-Supervisory Departments for application of Article I Section 3 of the Agreement | 96 |
| APPENDIX H | MHW Training | 96 |
| APPENDIX I | Transcription | 96 |
| APPENDIX J | Floating Policy | 97 |

vi

# AGREEMENT

## PREAMBLE

This Agreement is executed on this 1st day of July 2001. It is between St. Luke's Hospital of San Francisco (hereinafter for convenience called "the Employer" or "The Hospital") and Health Care Workers' Union Local 250 (hereinafter for convenience called "the Union"). This Agreement is the embodiment of the understanding between the parties for the term that it shall be effective, and as such it represents a compromise of all interests resulting from collective bargaining negotiations. The Employer and the Union, and each of the officers thereof executing this Agreement, jointly and severally represent that they are duly authorized to execute this Agreement.

## ARTICLE I    RECOGNITION OF UNION AND EXCLUSIONS AND MANAGEMENT RIGHTS

Section 1.    Recognition of Union and Exclusions

The Employer recognizes the Union as the exclusive bargaining agency for employees covered by this Agreement. This Agreement shall apply to Hospital employees working in the classifications listed in Appendix "A" and to any other classifications that may be established within the scope of the duties now included within these classifications. This Agreement shall not apply to executive, administrative, or professional employees, guards; nor to employees presently represented by any other collective bargaining agent recognized by the Employer; nor to

1

supervisory personnel with authority to hire and fire, or effectively to recommend such action.

### Section 2.   Management Rights

a.   **Rights Traditionally Exercised By Management** All rights traditionally exercised by management are reserved to the Employer unless specifically limited by the provisions of this Agreement.

b.   **Working Supervisor.** The Employer may continue to utilize working supervisors to perform work also being performed by employees covered under this Agreement. Under no circumstances shall the amount of work regularly performed by supervisors, and covered under this Agreement, be increased. A working supervisor will not be used to replace employees on vacation, holidays or leaves of absence. It is not the intention of the Employer to use working supervisors to avoid hiring casual employees for sick leave relief.

### Section 3.   Organizing at St. Luke's Hospital

In the spirit of cooperation, avoiding wasting patient care dollars on fighting unionization and fostering an improved and mutually beneficial relationship between St. Luke's Hospital and SEIU Local 250, both parties hereby agree to the following framework for organizing at St. Luke's Hospital.

a.   **Code of Conduct**

(i)   St. Luke's agrees that the question of whether employees should be represented by the Union is

one which employees should answer for themselves without any Employer interference. St. Luke's agrees to be neutral on the question of unionization and will not oppose efforts by employees to organize or select SEIU Local 250 as their collective bargaining representative. St. Luke's also agrees that its management, supervisors or agents will not make any statements, written or verbal, and or participate in any activity that will state opposition to the Union organizing campaign.

(ii)   SEIU Local 250 will not engage in a negative public campaign against St. Luke's as part of its campaign to organize employees. The Union agrees that its representatives or agents will not make any statements, written or verbal, that are derogatory or demeaning to St. Luke's Hospital or any of its representatives. The Union also agrees to convey its views about unionization in a positive, factual, non-coercive and non-intimidating manner, whether that information is conveyed on or around the Hospital's premises or at other meeting venues.

b.   **Pre-Election Process**

(i)   SEIU Local 250 and St. Luke's agree to arrange two information meetings with each identified classification that will be affected by the organizing efforts. The purpose of these meetings will be to inform the employees of St. Luke's position on the organizing efforts and to allow SEIU Local 250 an opportunity to convey its views about unionization in this type of meeting format. At each of the two meetings the employees will

meet with representatives of the employer and the Union separately, first with one party and then with the other. At the second meeting the order will be reversed.

(ii) During these meetings, affected employees will be advised that the Union has the right to request information, such as their home addresses and home telephone numbers. After this meeting St. Luke's shall supply, within seven (7) days of the Union's request, a list of all non-supervisory, non-represented employees, including their job classifications, departments, units, shifts, work location, home address and home telephone numbers.

(iii) SEIU Local 250 agrees not to post or leave flyers and literature on the hospital premises during its organizing efforts at St. Luke's. It is also agreed that any literature that is distributed to affected, un-represented employees will not contain any statements that are derogatory or demeaning to St. Luke's or any of its representatives.

(iv) Both parties agree that there will one (1) election, filed through the National Labor Relations Board, held every six (6) months for all or part of the affected classifications at St. Luke's Hospital as listed in Appendix "G" of this Agreement. During this election, employees shall vote for representation in their department by secret ballot, each classification counted as a separate unit.

c. Expedited Secret Ballot Election

There shall be a secret ballot election conducted by the NLRB within forty-five (45) days from the date the Union submits authorization cards from at least thirty percent (30%) of all eligible employees in the bargaining unit for which the Union is seeking an election. The Union shall file a unit clarification/representation petition with the NLRB and the parties will stipulate that each petition, for each such classification, is for an appropriate bargaining unit, for either unit clarification and/or representation purposes.

d. Recognition and Election

In the event the Union wins the election, it will be immediately recognized as the representative of the affected employees for purposes of the Grievance and Arbitration procedure. St. Luke's Hospital and SEIU Local 250 agree to commence negotiations no later than thirty (30) calendar days after the official notification from the National Labor Relations Board. The parties will exercise their best efforts to reach a final agreement within ninety (90) calendar days on all other matters regarding wages, hours, and working conditions particular to the affected department.

e. Dispute Resolution.

St. Luke's Hospital and SEIU Local 250 agree to resolve any and all disputes arising pursuant to this section 3. by a mutually agreed upon expedited dispute resolution process. In the event of a dispute, based on any part of this Section 3, both parties agree to try to resolve the dispute within five (5) working days of

provision of notice. Notification shall be given to the designated representative of both parties. The parties agree that the above dispute resolution process shall be used in good faith and will not be used to delay the process in any way.

If the parties are unable to resolve the dispute within the five (5) working day period, it shall be submitted to Federal Mediator Joel Schaefer or if he is unavailable, another mutually agreeable mediator of FMCS, who shall be empowered to render a decision on the matter in dispute to which both parties agree to abide.

## ARTICLE II      EQUAL EMPLOYMENT OPPORTUNITIES

**Section 1.      Discrimination**

(a)  The Employer agrees not to discriminate against any employee because of membership in the Union or because of any activities on behalf of the Union. Union activities shall not interfere with the normal operations of the Hospital.

(b)  Neither the Employer nor the Union shall discriminate for or against any employee because of color, creed, national origin, political affiliation, sex, physical handicap, religion, marital status, age or sexual orientation in violation of Law.

**Section 2.      Equal Pay**

There shall be no distinction between the wages paid to men and the wages paid to women for the performance of

6

comparable quality and quantity of work on the same or similar operations.

## ARTICLE III   UNION MEMBERSHIP

**Section 1.      Union Membership Requirements**

(a)  Employees Subject To This Agreement. All employees of the Employer who are subject to this Agreement shall be required as a condition of employment to maintain their membership in the Union in good standing during the life of this Agreement.

(b)  Union Membership. Any person hereinafter employed who is not a member of the Union shall make application to join the Union within thirty (30) days from the date of employment.

(c)  Employees Failing to Comply. Any employee who fails to comply with this Article shall be terminated within forty-five (45) days after written notice to the Employer by the Union concerning the delinquency; unless the employee has remedied the delinquency within said forty-five (45) day period.

**Section 2.      Notice to New Employees**

(a)  Written Notice and Dues Authorization. At the time a new employee is hired, who will be subject to this Agreement, the Hospital shall provide the employee with a copy of the Agreement, written notice of the Hospital's recognition of the Union as the Collective Bargaining Agent for the employees covered by the Agreement and a form indicating authorization for

7

dues deduction. (The form shall be agreed upon by the Hospital and the Union).

(b.) **Names of New Hires and Terminated Employees.** No later than the 10th of the following month, the Employer shall supply the Union with the names, addresses and classifications of work of new employees and the names of employees terminated. The Employer and the Union shall maintain standard forms and routines for the handling and processing of such notices to employees and to the Union.

(c.) **New Employee Orientation.** The Union shall be given fifteen (15) minutes to provide a new member orientation during the Employer's normal orientation program for new hires.

**Section 3.     Deduction of Union Membership Fees**

(a) **Assignment Of Wages.** The Employer will honor written assignments of wages to the Union for the payment of Union membership fees when such assignments are submitted in a form agreed to by the Employer and the Union.

(b.) **Deducting and Remitting Of Fees.** The Employer will promptly remit the membership fees deducted pursuant to such assignments with a written statement of the names of the employees for whom deductions were made. Normally, the deduction will be made on the first pay period of each month for the then current membership fees. However, the Union and the Employer may make other arrangements by mutual consent.

(c.) **Hold Harmless.** The Union will hold harmless the Employer against any claim which may be made by any person by reason of the deduction of the Union membership fees, including the cost of defending against such claim. The Union will have no monetary claim against the Employer by reason of failure to perform under this section.

**Section 4.     Committee on Political Education**

The Hospital will honor assignments of wages to the Union's Committee on Political Education (C.O.P.E.) fund, when such assignments are submitted on a form agreed to by the Union and the Hospital, and the Hospital will remit such contribution to the Union. It is understood by all parties that such contribution will be on an individual and voluntary basis.

**Section 5.     Bulletin Boards**

(a) **Official Notices.** The Union shall be given use of bulletin boards to post official notices of Union business, subject to prior approval of such notices by the Director of Human Resources.

(b) **Location of Bulletin Boards.** For this purpose, the Union will be given use of one (1) bulletin board in each of the following areas.

(i.)     Food Services

(ii.)     Second Floor Cafeteria

(iii.)     Basement

(iv.)     Patient Business Services

(v.)     Radiology

(vi.)     Employee Lounge on each Nursing Unit

(vii)    Laboratory

(viii)    Respiratory Care Services

# ARTICLE IV    CATEGORIES OF EMPLOYEES

## Section 1.    Employee Categories Described

There shall be five employee categories: (a) Regular Full-Time; (b) Regular Part-Time; (c) Short-Hour; (d) Casual and (e) Temporary.

(a)    A Regular Full-Time Employee is one who works on a pre-determined work schedule of forty (40) hours per week.

(b)    A Regular Part-Time Employee is one who works on a pre-determined work schedule of fewer than forty (40) hours, but at least twenty (20) hours per week.

(c)    A Short-Hour Employee is one who works on a pre-determined work schedule of fewer than twenty (20) hours per week.

(d)    A Casual Employee is one who is employed intermittently, as required.

(e)    A Temporary Employee is one who is hired to work a pre-determined work schedule for a limited period which shall not extend beyond six (6) months.

(i)    Regular, Short-Hour, Or Casuals Bidding For A Temporary Position. If a Regular employee submits a bid for a temporary position and is awarded the position subject to the requirements of Article V, Section 3, Job Vacancies, Posting and Bidding, his/her benefit accrual will be adjusted consistent with the predetermined schedule of the temporary position. A Short-Hour or Casual

10

employee who is awarded a temporary position does not become eligible for benefits thereby.

(viii)    Return to Former Position. Any Regular, Short-Hour or Casual employee who is awarded a temporary position, upon conclusion of that position, will be returned to his/her former position.

## Section 2    Category Reclassification

(a).    Reclassification of a Short-Hour To A Higher Status. A Short-Hour employee who regularly works a pre-determined work schedule of twenty (20) hours per week or more for longer than ninety (90) calendar days shall be reclassified as a Regular Full-Time or Part-Time employee, whichever is applicable.

(b).    Reclassification of A Part-time Employee to A Schedule of More Hours. A Regular Part-Time employee who is regularly assigned for a period in excess of ninety (90) calendar days to an additional day or days of work shall be reclassified to a revised schedule consistent with such additional work.

(c).    Reclassification of A Casual Employee. A Casual employee who regularly works a pre-determined work schedule for longer than ninety (90) calendar days shall be reclassified as a Short-Hour, Full-Time or Part-Time employee, whichever is applicable.

(d).    Seniority After Reclassification. When an employee is reclassified under sub-section (a) or (c) of this section, seniority for purposes of benefit accrual, at the employee's option, shall begin:

11

(i)  Based on Repayment of In-Lieu-Of-Benefits Differential Repayment. As of the beginning of the ninety (90) day period if the employee repays to the Hospital the in-lieu-of-benefits pay for that period. Such employee will have vacation, sick leave and holiday accruals credited to him/her as of the beginning of the ninety (90) day period.

(ii)  Based On No Repayment. As of the date of reclassification, if the employee does not repay the in-lieu-of-benefits for the (90) day period; and

(iii)  Eligibility For Benefits. Eligibility for health benefits and life insurance shall begin on the first of the month following completion of the probationary period, or the month following reclassification, whichever is later; and

(iv)  Arbitrator's Award Of Reclassification. If the reclassification of a Casual employee to Short-Hour, Full-Time or Part-Time status is awarded by an arbitrator, the reclassification shall be effective beginning the date of the Step 2 grievance meeting and the arbitrator's decision shall so provide.

(e).  Benefit Eligibility For A Temporary Employee Reclassified to Another Status. In the event that a Temporary employee becomes a Regular Full-Time or part-time employee, the qualifying date for fringe benefit accrual is the date of reclassification to full-time or part-time status. Eligibility for health benefits and life insurance shall begin on the first of the month following completion of the probationary period, or the month following reclassification, whichever is later.

12

Prohibited Use of Temporary Employees. A Temporary employee shall not be terminated solely to prevent his/her advancement to another employee status when the temporary job continues in effect, or for the sole purpose of keeping a Regular job constantly staffed by Temporary employees. The foregoing provisions, however, are subject to the Provisions of Article V, Section 1, Probationary Period.

Section 3.    Distribution of Casual Work

(a).  Availability And Use of Casuals Prior To Use Of Registry. Casual employees shall submit in writing their current availability for work, including days of the week and shifts, and current phone number. The Hospital shall maintain lists of its Casual employees. Such lists shall be maintained by classification within each department. Before resorting to registry employees, the Hospital will call Casual employees in such classification and department who have indicated availability for the particular day and shift.

The Hospital is not required, however, to call a Casual employee for days or shifts not listed by that employee, or where such calls are not practical due to circumstances such as the time of the day or the shortness of time in which it is known that an employee is needed.

(b).  Times The Hospital Places Calls. The Hospital shall specify the times during which it will place calls to employees in advance of the shifts, and these call times will apply where the need for an employee is known in advance of such times, but not where the need for an employee arises after such times. The Hospital will give the Union prior notification of significant changes

13

in the specified time for calls to employees for assignment of casual work.

(c). **Written Records of Phone Calls.** The Hospital shall maintain written records of phone calls to Casual employees who have made themselves available for work. These records will be made available for review by the Union Representative or Shop Representative's or Union Steward's written request. The records will be maintained in a mutually agreed upon format.

(d). **Removal From Casual List – Failure to Accept Assignments.** If a Casual employee, on three or more occasions during a three month period, is personally contacted by the Hospital during the specified calling time, and fails to accept assignments for a day of the week and shift for which he/she has indicated availability in writing, such employee shall be removed from the casual list.

Casual employees shall not be charged with unavailability or failure to accept assignments if:

(i). there is a documented death in the employee's immediate family, that occurred within seven (7) calendar days prior to the offered assignment;

(ii). the Casual employee has notified his/her Department supervisor of his/her unavailability for work prior to the designated calling time.

(e). **Removal from Casual List – Unavailability.** Casual employees who do not work at least 5 days within any three (3) month period, may be removed from the casual list.

(f). **Offer Of Casual Work By Seniority.** Casual work will be offered to qualified employees in a classification and department, in the following order, with seniority determining preference within each group, provided that overtime does not result.

1) Full-Time employees, if it does not conflict with their predetermined schedule;
2) Regular part-time employees;
3) Limited part-time employees;
4) Casual employees.

Employees must indicated their availability for additional work in writing, including days of the week and shifts to be eligible to receive call for casual work. For purposes of this Section, any employee who has so indicated his/her availability is considered a Casual employee, and is subject to the provisions of this Section.

Section 4. Distribution of Overtime.

a. Any overtime work must be approved and authorized in advance by supervisory or managerial personnel. The Hospital will exercise its best efforts to follow the procedures outlined below, however, the parties expressly recognize that exigent circumstances may preclude strict compliance with the procedures.

b. A list will be maintained in the department/staffing office. It is the sole responsibility of the employee to sign up for overtime in order for the Hospital to follow the provisions of the Agreement regarding overtime distribution.

c. When the Hospital determines overtime is necessary, employees will be offered overtime in the following manner:

(i) Prescheduled Overtime. If the Employer has enough advance notice of the need for overtime, such overtime will be scheduled by offering overtime by seniority to those qualified employees who have expressed interest in overtime.

(ii) Overtime the Need for which is Unforeseen. When the need for overtime arises which is unforeseen, the Employer will offer such overtime first on the basis of seniority to qualified employees who have expressed interest in overtime and are available to commence work without any delay or disruption of the work flow.

(iii) Overtime for Short Periods of Time. Overtime which is needed for short periods of time, generally fewer than two (2) hours, (for example: to complete an existing assignment) will not be offered by seniority unless practical and where there will be no delay or disruption in the work flow.

ARTICLE V    SENIORITY AND JOB VACANCIES

Section 1.    Probationary Period

(a) Regular, Short-Hour, and Temporary Employees. All Regular and Temporary employees shall be on probation during their first ninety (90) calendar days of employment with the Hospital and may be terminated for any reason at the discretion of the

16

Hospital during the probationary period. All Short-Hour employees shall be on probation during their first one hundred thirty-five (135) calendar days of employment with the Hospital and may be terminated for any reason at the discretion of the Hospital during the probationary period.

If an employee changes status during the probationary period from Regular Full-Time or Part-Time status to Short Hour status; or vice-versa, the total probationary period to be served shall be calculated on a pro rata basis.

Example: If a new Short Hour employee works sixty seven (67) calendar days (i.e., one-half [1/2] of the applicable probationary period) and then becomes a Full-Time employee, the probationary period would be completed after another forty-five (45) calendar days.

Example: If a new Full-Time employee works thirty (30) days (i.e., one-third [1/3] of the Full-Time probationary period), and then becomes a Short-Hour employee, the probationary period would be completed after another ninety (90) calendar days.

(b) Casual Employees. Casual employees shall serve a probationary period of six (6) months or two hundred eight (208) hours, whichever occurs last and may be terminated for any reason at the discretion of the Hospital during the probationary period.

(c) Non Preclusion of Grievance. This does not preclude a grievance alleging solely a violation of Article II,

17

Section 1, paragraphs (a) and (b) by the Union during any employee's probationary period.

Section 2.    Commencement/Termination of Seniority.

For regular and Short-Hour employees, seniority for general purposes as well as for bidding, layoff and recall shall be based on the most recent date of hire in a bargaining unit position, with the exception that when a Temporary employee is reclassified as a Regular employee or Short-Hour employee, seniority shall include time spent in the temporary position. Casual employees shall have seniority among themselves based on date of hire in a bargaining unit position. The seniority date for Casual employees upon reclassification to Regular Full-Time, Regular Part-Time, or Short-Hour status shall be the original date of hire. The foregoing provisions are subject to the provision that seniority shall have no application during the probationary period.

An employee's seniority shall be terminated for the following reasons:    a) Discharge for Cause, b) Retirement, or c) Resignation.

Section 3.    Job Vacancies, Posting and Bidding.

(a).    Notice to Union. When vacancies occur in positions subject to this Agreement, the Hospital shall notify the Union office and shall afford it an opportunity to send applicants for the position who may or may not be members of the Union. The Hospital may employ the person who, in its judgment, will make the best employee. The Hospital shall be the sole judge of the fitness of any applicant.

(b)    Posting of Vacancies. When a vacancy for a Regular, Short-Hour, Casual, or Temporary position subject to

18

this Agreement occurs in any department, a notice of that vacancy shall be posted in a location or locations accessible to all employees for a minimum period of seven (7) days before the Hospital fills the vacancy. Qualifications for vacant positions shall appear on position postings. This does not prevent the Hospital from filling the vacancy on a temporary basis during the seven (7) day posting period. Vacancies shall be posted regardless of whether the vacancy reflects a totally new position or arises by virtue of a job change as defined in Section 4, Reduction in Force and Recall, below. Postings shall include the hours, days off, assignment, and shift of the position.

(c)    Bidding on Posted Vacancies. Any current employee, including Temporary and Casual employees, may apply for a posted vacancy on the same shift or another shift by submitting a written application. Preference shall be given in the following order provided that the applicant meets the qualifications for the job and the applicant's performance has been satisfactory on his/her current job.

(1)    Regular employees from the same department, and among such employees seniority shall govern;

(2)    Regular employees from other departments, and among such employees seniority shall govern;

(3)    Short-Hour employees from the same department, and among such employees seniority shall govern;

(4)    Short-Hour employees from other departments, and among such employees seniority shall govern;

19

(5) Casual employees from the same department, and among such employees seniority shall govern;

(6) Casual employees from other departments, and among such employees seniority shall govern;

(7) Temporary services;

(8) Other applicants;

Employees submitting a written bid for a posted vacancy under this subsection shall be informed by the Hospital whether or not they are awarded the vacancy.

(4) Potential Vacancies. Requests for transfer to a vacancy which may potentially occur within the Hospital may be submitted in advance, provided such request is submitted in writing to the department in which the potential vacancy may occur, with a copy to the Human Resources Department of the Hospital. Such written request shall constitute an automatic bid for thirty (30) days. It is understood that any written request under this Section is limited to vacancies or potential vacancies in positions subject to this Agreement.

(e) Laid Off Employees. Regular and Short-Hour employees on layoff status may submit a bid for an existing or potential vacancy under the provisions of Section 3(c) and (d) above, and such bidding rights are in addition to the employee's recall rights as found within Section 4 below. It is the employee's responsibility to initiate any such bids, and the Hospital has no responsibility to notify laid off employees as to posted or potential vacancies.

20

(f) It is understood that any bid under this Section is limited to vacancies in positions subject to this Agreement. The above references are to Regular, Short-Hour and Temporary vacancies and not to assignments arising from rotation of personnel, vacation, holiday, or sickness relief.

(g) Maintaining Seniority Lists. The Hospital will maintain a seniority list of Regular, Short-Hour, Casual, and laid off employees by classification and department, and such lists shall be made available in the Hospital for Union inspection.

(h) Promotion, Transfer and Return. When an employee is promoted or transferred to a new position under this Agreement he/she shall serve a thirty (30) day evaluation period. If necessary, the employee will be given a reasonable period of orientation. The necessity, nature and duration of the period of orientation will be determined by the Hospital. If, within the evaluation period following the date of transfer or promotion to a new position, in the opinion of the Employer, the employee is failing to perform his/her duties in a satisfactory manner the Employer shall return the employee to his/her former position with no loss of seniority (for all purposes).

Section 4.    Reduction in Force and Recall

In the event of a reduction in force (i.e. layoff or reduction in hours) the Hospital will eliminate Temporary positions in the affected classifications of the department. It is the intent of the following provisions to protect senior employees and their category:

21

a. Temporary Layoff. A temporary layoff is defined as one which lasts not more than five (5) days. Except in cases where specialized skill or qualifications are required on the job, seniority shall apply on the affected shift in the department and classification when there is a temporary layoff or reduction of hours. Recall by classification to the department in the case of temporary layoff or reduction in hours shall be by seniority. The purpose of this paragraph is to give the Hospital the flexibility to make temporary changes in hours or temporary layoffs without triggering full layoff language as set forth in paragraphs (b) and (c) below. The Hospital shall be the sole judge of the qualifications necessary to perform jobs within clerical classifications and will be reasonable in so doing.

(b) Indefinite and Permanent Layoff. An indefinite layoff is defined as one which lasts more than five (5) days. A permanent layoff is one in which the employee(s) has no reasonable expectation of recall. Except in cases where specialized skill or qualifications are required on the job, seniority shall apply in the case of indefinite or permanent layoff or reduction of hours in the affected classification and department, with the senior employees bumping less senior employees. Recall by classification to the department from indefinite or permanent layoff or reduction of hours shall be by seniority, provided that the employee being recalled has the skill and ability to perform the work to be done. The Hospital shall be the sole judge of the qualifications necessary to perform the jobs within clerical classifications and will be reasonable in so doing.

(c) Order of Layoff. Casual employees in the affected department shall be the first to be laid off and the last to be recalled when there is a reduction in force. Seniority

22

shall apply in both cases. Short-Hour employees in the affected department shall be the next to be laid of and recalled according to seniority. Regular employees in the affected department shall be the last to be laid off and the first to be recalled. Regular employees may exercise seniority to displace any non-benefited employee in another department, provided he/she is qualified to do the job. The Hospital shall be the sole judge of the qualifications necessary to perform jobs within clerical classifications and will be reasonable in so doing.

Layoff Affecting A Substantial Number of Employees. In the event a reduction in force affects a substantial number of employees in a classification and department, the Hospital will follow the procedure set forth below:

(i) The number of positions and hours assigned to those positions will be determined in the affected department.

(ii) If it is necessary to change shift assignments and/or the number of scheduled hours of positions, employees in the affected classification shall be offered the revised positions in seniority order. Junior employees not awarded positions shall be laid off.

(iii) Where the same classification is found within more than one department, the most junior Regular employee or Short-Hour employee being laid off from one department may displace a more junior Regular or Short-Hour employee from another department, if the employee possesses the skill, knowledge or ability to perform the job. If necessary, the employee will be given a reasonable period of orientation. The

23

necessity, nature and duration of the orientation period shall be determined by the Hospital. Thereafter, should the employee fail to perform satisfactorily, in the opinion of the Hospital, the employee shall revert to layoff status. (The rights involved in the displacement of more junior employees in the same classification in another department as provided in this subsection apply to any indefinite or permanent layoff or reduction in hours.)

(d) Laid Off Employees. Regular employees and Short-Hour employees on layoff status may request placement on the Hospital's casual lists for which they meet the qualifications. Such employees shall be paid the premium in lieu of benefits for all such hours worked. Laid off employees shall receive priority over Casual employees for available work and shall be called in accordance with their availability and their seniority. However, laid off employees who refuse an assignment on three (3) occasions during a three (3) month period shall be removed from the casual lists.

Employees on layoff status may bid for a potential vacancy or an existing vacancy arising in a classification, and/or employee category and/or department to which they have no recall rights. Such bids must be submitted in accordance with Article V, Section 3,(d). Potential Vacancies.

Twelve (12) consecutive months of layoff status shall constitute a break in service provided however, that if the employee works eight hundred (800) hours in the first twelve (12) months of layoff, the break in service shall occur after twenty-four (24) months of layoff. When a break in service occurs, the employment

24

relationship is severed and any subsequent re-employment shall be as a new hire.

(e) Notice of Layoff. The Hospital will use its best efforts to give the Union two (2) weeks advance notice of departments in which a layoff may occur.

(f) Alternative Arrangements. In the event the Hospital and the Union mutually agree to use a modification of the above procedure for any force reduction, such agreement shall be reduced to writing and signed by the designated representative of the Hospital and the Union Field Representative prior to the scheduled implementation date of the reduction in force.

Section 5. Consolidation of Clerical Job Functions

(a) When the Hospital consolidates all or substantial parts of existing clerical jobs into new positions, preference in bidding on these new positions shall be given in the following order, provided the applicant meets the qualifications for the job, as established by the Hospital.

1. First preference shall be given to employees whose jobs are eliminated, regardless of their department or classification, and among such employees, seniority shall govern.

2. Thereafter, preference shall be given in accordance with Article V, Section 3. Job Vacancies, Posting and Bidding.

(b) Orientation/training for a reasonable period will be given employees whose jobs have been eliminated by a job consolidation. The necessity, nature and duration of the orientation/training shall be determined by the Hospital.

(c) In the event the Hospital creates a new position by consolidating job duties within and outside the

25

bargaining unit, the Hospital will meet and confer with the Union prior to filling the position. If the new position is in the bargaining unit, the Union and the Hospital will bargain to determine the appropriate rate of pay.

Section 6.     Definition of Department

This Article's references to "department" shall mean the "departments" for seniority purposes:

a. Environmental Services
b. Food Services.
c. Materials Management
d. Patient Care Service, including:

• Emergency
• Laboratory
• Patient Care Services
• Psychiatric Partial Hospitalization*
• Radiology
• Sterile Processing
• Surgical Services

e. Respiratory Care Services
f. Laboratory

For employees in the Clerical Classifications, these departments are:

a. Admitting/Registration/Telecommunications/Materials Management
b. Ancillary and Other Support Services, including:

• Cardio-Neuro

• Environmental Services
• General Accounting
• Laboratory
• Medical Staff
• Management Information Services
• Pharmacy
• Radiology
• Quality Improvement
• Rehabilitation Services
• Respiratory Therapy/Pulmonary Function
• Utilization Review

c. Food Services
d. Medical Records
e. Patient Business Services
f. Patient Care Services, including:

• Emergency
• Patient Care Services
• Psychiatric Partial Hospitalization*
• Surgical Services

g. Transcription

*For purposes of temporary layoffs, Psychiatric Partial Hospitalization will be considered a separate department. The Hospital shall be free to subsequently change its own departmental structure at its sole discretion. Such changes shall not alter the original listing of departments for seniority purposes, unless the Hospital and the Union reach mutual agreement.

**Section 7.**    **Bumping**

Except as expressly stated in the above provisions, none of the foregoing paragraphs of this Article contemplate a bumping procedure.

# ARTICLE VI . CLASSIFICATION AND WAGES

**Section 1.**    **Schedule of Wages**

The minimum straight-time hourly rate of pay shall be shown in Appendix "A" attached hereto and made a part thereof.

**Section 2.**    **Payday**

(a) All wages shall be paid on the basis of two week periods. A minimum of one (1) month's notice will be given to employees if the pay period is to be changed to a one (1) week pay period by the Hospital.

(b) If the Hospital's payday is on Friday, the Hospital will use its best efforts to pay employees working P.M. or night shifts (as defined in Article VII, Section 3) by the conclusion of their last shift which begins on Thursday.

(c) When an employee's day off falls on a payday, the Hospital will use its best efforts to have the employee's check available on the day before payday.

(d) If the Hospital uses symbols on payroll checks, such symbols shall be explained to an employee upon request.

28

**Section 3.**    **Progression Schedule**

(a) Progression Based on Service. Progression schedules are not based upon experience in any particular classification of work but upon service in the Hospital. The starting date of last continuous employment shall be used as the base. No employee shall be discharged or laid off prior to his/her automatic rate advancement for the purpose of evading such advancement.

(b) Progression In Cases Of Promotion. However, as an exception to Paragraph (a) above, when an employee is promoted to a higher paid job classification, placement in the progression schedule of the new job classification shall not be determined by his/her length of service with the Hospital, but rather the employee will be given a twenty dollar ($20.00) per month increase or will be placed at the first step in the progression schedule which is greater than the employee's current base rate, whichever increase is greater. After promotion the employee shall receive further increases in pay at annual intervals based upon the schedule of wages for the new job classification in Appendix A attached hereto and the employee's promotion date shall become his/her anniversary date for such further increases.

(c) Progression For Short-Hour and Casuals. Short-Hour and Casual employees shall be eligible for progression to the next tenure step upon the accumulation of one thousand (1,000) hours of work, provided:

(1) No employee shall advance more than one (1) tenure step during any twelve (12) month period beginning with the date of employment or the most recent date of reclassification from a Regular position to a Short-Hour or Casual position, and

29

(2) The accumulation of each one thousand (1,000) hours is accomplished in no more than three (3) years from the date of assignment to the employee's current tenure step.

If an employee does not work at least one thousand (1,000) hours in such three (3) year period, the employee will remain in the same tenure step and start a new accumulation of the one thousand (1,000) hours toward tenure advancement.

(d) Progression For Technical Employees With Previous Experience. A Licensed Vocational Nurse, Mental Health Worker or Technical employee *excluding the Orthopedic Technician classification) hired by the Hospital under this Agreement shall start at Step 2 (the after-one-year wage rate) of the applicable progression schedules in Appendix A if she/he has had three (3) years or more previous experience within the last five (5) years in the same job classification within the last ten (10) years in the same job classification at another accredited acute care hospital. Such an employee who has had six (6) years or more of previous experience within the last ten (10) years in the same job classification at another accredited acute care hospital shall start at Step 3 of the progression schedules in Appendix A. For purposes of this paragraph (d), previous experience shall be credited to eligible employees only when such experience was obtained while in a position of twenty (20) hours or more per week.

Section 4.    Premium Conditions

It is understood that the provisions of this Agreement relating to hours, wages and working conditions are intended to establish minimum terms for the hiring of employees subject to this Agreement that so long as the

Employer meets these minimum terms with respect to such employment, it has fully performed its obligations under this Agreement, and that this Agreement is not intended to preclude or discourage the hiring of employees under terms more favorable to them, and accordingly, if any employees are hired under terms more favorable to them, this shall be a matter of individual arrangement with such employees and such arrangement may be established, eliminated, or changed at any time without relation to this Agreement.

Section 5.    Job Descriptions and Job Classifications.

(a) For Nursing, Respiratory Care, Laboratory, Service & Maintenance classifications, it is agreed that the Employer and the Union shall maintain descriptions setting forth job duties in accordance with duties necessary and traditional in the operation of the Hospital concerned with the care, treatment and recovery of patients. It is recognized that changes of job titles contained in this Agreement may be necessary in accomplishing this project and such changes shall be by mutual agreement under the terms of this Agreement.

(b) For Clerical classifications, it is agreed that the Employer shall maintain job descriptions setting forth the job duties necessary to accomplish the goals of each position. The Employer reserves the right to change job titles and/or job duties to meet operational needs of the Hospital. The Hospital will give the Union reasonable notice of material changes in job duties for classifications covered by this Agreement and will, upon request, meet and confer with the Union regarding such changes and, if applicable, will meet to negotiate an appropriate wage rate. In cases where changes in the duties of a classification are less than material the Union Steward will be notified prior to any

change; and the Hospital will meet and confer with the Union if such is requested by Union Representatives.

(c) Job descriptions for classifications shall be made available to the Union and employees within three (3) working days of a request.

### Section 6.    Uniforms

It is understood that uniforms convey a sense of teamwork, purpose and shared goals as viewed by our patients, visitors, and other Hospital staff. Therefore, the Hospital will provide uniforms to Hospital staff in designated classifications. It will be the employee's responsibility to reasonably maintain and launder such uniforms, and the Employer's responsibility to replace them as they become worn. Employees shall return provided uniforms to the Hospital prior to termination. Employees shall agree to have deducted from their final pay check at termination the cost of uniforms not returned.

### Section 7.    Meals

The Employer agrees, without charge, to provide meals for all dietary employees covered by this Agreement, when employees are scheduled to work a shift during which meal service is provided. However, in no event shall a dietary employee receive more than two (2) meals during a work day.

### Section 8    Standby Pay

Any employee who has been instructed to be "on standby" but who is not called, shall be paid at the rate of one half (1/2) the straight-time hourly rate of his/her classification when "on standby." Any employee who has been instructed

to be "on standby" on a holiday (not the floating holiday) named in Article VIII, Section 3 of this Agreement but who is not called shall be paid at the rate of three fourths (3/4) the straight-time hourly rate of his/her classification when "on standby." An employee shall be compensated at time and one half (1-1/2) the straight-time hourly rate with a guarantee of three (3) hours work or pay when called to work.

### Section 9.    Evaluation of Employees

Periodic performance evaluation reports are intra-hospital records and are not subject to the provisions of Articles X and XI. The employee shall be given a copy of any periodic written formal performance evaluation on request.

### Section 10.    Temporary Work in A Higher Paid Classification

Any employee directed to relieve another employee from a classification carrying a lower rate of pay to the one carrying a higher rate of pay for less than one (1) hour on a shift shall be paid at the rate of the lower paid classification for all time worked on that shift. An employee directed to relieve another employee from a classification carrying a lower rate of pay to one carrying a higher rate of pay for one (1) hour or more but less than four (4) hours on a shift shall be paid at a rate based on the ratio of time spent in each classification on that shift. Any employee directed to relieve another employee on a temporary basis from a classification carrying a lower rate of pay to one carrying a higher rate of pay for four (4) or more hours on a shift shall receive the rate of the higher paid classification for all the time worked on that shift.

## ARTICLE VII    HOURS OF WORK

### Section 1.    Employee Work Schedules and Overtime

(a)  (i)   The employee's work period shall be designated by the Employer and shall be a consecutive period of seven (7) calendar days.  Straight-time hourly rates shall apply up to a maximum of eight (8) hours per day or forty (40) hours or five (5) days in such seven (7) day period.  All work in excess of eight (8) hours per day or forty (40) hours or five (5) days per seven (7) day period shall be paid at the rate of one and one half (1-1/2) times the basic straight time hourly rate.  All work in excess of twelve (12) hours per day shall be paid at the rate of two (2) times the base hourly rate.  Except for Casual employees, each employee shall receive two (2) consecutive days off each week.  Work performed on the 7th consecutive work day of the work week will be paid at two (2) times the base hourly rate.  No employee will be required to work two (2) shifts within a period of twenty-four (24) hours except in cases of an emergency.

(ii)   Except for casual employees, an employee required to work more than seven (7) consecutive days without a day off shall be compensated thereafter at one and one-half (1-1/2) times the employee's basic straight-time hourly rate for each day worked or portion thereof until granted a day off.  This provision (a)(ii) may be waived on the request of any individual employee and with the agreement of the Hospital.

(b)   As an exception to the provisions of paragraph (a)(i), where the employees in a department have elected to adopt the weekend off provisions of Section 7 of this Article, and have not waived the provisions of said

---

Section 7, it is not required that any employee in such department be paid one and one-half (1-1/2) times the basic straight-time hourly rate for work in excess of five (5) days per week, or two (2) times the basic straight-time hourly rate for work on the seventh (7th) consecutive day of the week, or that employees in such department shall receive two (2) consecutive days off each week without split or rotation.  Where employees in a department have not waived the weekend off provisions of Section 7 of this Article, all employees in such department shall be paid weekly overtime in accordance with the eighty (80) hour option under the Federal Fair Labor Standards Act, may be required to work back-to-back workweeks, and may have their days off rotated or split without penalty.  However, the provisions of paragraph (a)(ii) of this Section shall apply to such employees.

(c)   Schedules of starting and quitting times and days off of Regular employees will be posted two (2) weeks in advance.

(d)   If employees request to exchange days off and such exchange is approved by the employees' supervisor, no overtime premium will apply as a result of granting such request.

### Section 2    Rest Between Shifts

Each Regular employee shall have an unbroken rest period of at least twelve (12) hours between shifts.  All hours worked within the above rest period shall be paid at the rate of time and one-half (1-1/2).  Overtime for which premium pay is given shall count as rest periods for purposes of this paragraph.  The provision of this Section may be waived on the written request of the individual employee and with the

agreement of the supervisor. Such requests for waivers shall be in writing and the individual employee shall indicate the time period during which such waiver shall be in effect.

Section 3.    Shift Definition and Premiums

(a) Straight Shift. A straight shift is defined as a regular day's work of eight (8) hours completed within nine (9) consecutive hours with not more than one (1) hour for lunch.

(b) Split Shifts. A split shift is defined as eight (8) hours completed within a spread in excess of nine (9) consecutive hours without more than one (1) break. Employees performing work on a split shift completed within a spread of more than nine (9) hours but not more than eleven (11) hours shall be paid a premium of four dollars and twenty-five cents ($4.25) per day in addition to their regular rate of pay. No new split shift shall be instituted by the Employer after the effective date of this Agreement without mutual agreement from the Union. In addition to the foregoing, any split shift work completed beyond a spread of eleven (11) consecutive hours shall be paid for at the rate of time and one-half (1-1/2) for all hours worked beyond the eleven (11) hour spread.

(c) P.M. and Night Shift Premiums

(i) P.M. Shift. Any shift of four (4) hours or more beginning at or after 12:00 p.m. and before 10:00 p.m., and ending after 6:00 p.m.

(ii) Night Shift. Any shift of four (4) hours or more beginning at or after 10:00 p.m. and before 6:00 a.m.

(iii) Clerical employees, Laboratory Assistants, and Respiratory Care Practitioners who work a P.M. shift shall be paid a premium of ten percent (10%) of their straight-time base hourly wage. Clerical employees, Laboratory Assistants, and Respiratory Care Practitioners who work a night shift shall be paid a premium of fifteen percent (15%) of their straight-time base hourly wage.

(iv) All employees, other than clerical employees, Laboratory Assistants, and Respiratory Care Practitioners who work a P.M. shift shall be paid a premium of seventy-five cents ($.75) per hour above their regular rate of pay. All employees, other than clerical employees, Laboratory Assistants, and Respiratory Care Practitioners who work a night shift shall be paid a premium of ninety cents ($.90) per hour above their regular rate of pay with the exception of LVNs/LPTs who will receive one dollar and twenty-five cents ($1.25) per hour when working a night shift.

Section 4.    Reporting Pay

(a) If an employee appears for work and through no fault of the Hospital (i.e., telephone outage, power outage, computer crash, etc.), work cannot be performed, the Hospital may send the employee home. In such case, the employee will be paid for actual hours worked.

(b) If the Hospital makes a reasonable effort to contact the employee at least two (2) hours prior to .his/her scheduled starting time and notifies the employee of no work, then the employee is not entitled to pay for reporting to work.

(c) Except as provided in paragraphs (a) or (b) above, if an employee reports for work and is notified by the Employer that his/her regular work is not available, the employee may elect to accept four (4) hours of pay in lieu of work, or work his/her scheduled shift performing work in the same department.

(d.) Use of Vacation or Holidays. An employee, at his/her discretion, may use accrued vacation or holidays for a cancelled shift.

Section 5.    Payment in Lieu of Fringe Benefits

Temporary employees, Casual employees and Short-Hour employees shall receive a differential of seventy-five cents ($.75) above the straight-time hourly rate of their classification, and the shift differential when applicable, in lieu of fringe benefits except in the case of LVNs, Respiratory Care Practitioners, Surgical Technicians, Licensed Psychiatric Technicians, and Perinatal Technicians who will receive two dollars ($2.00).

Section 6.    Rest Periods

a. Breaks. Each employee shall be granted a rest period of fifteen (15) minutes during each half shift without deduction in pay.

b. Penalty for Missed Lunch. An employee will be paid one (1) additional hour of straight time pay for each day that he/she is not provided with a thirty (30) minute meal period.

c. Penalty for Missed Break(s). An employee will be paid one (1) hour of straight time pay for each day in which he/she is not given one (1) or both of his/her fifteen

(15) minute rest periods. The maximum penalty for missing one (1) or more rest periods is one (1) hour at straight time pay.

Section 7.    Weekend Work

a) Rotating Weekends. The Employer will use its best efforts to grant each Regular employee within a department every other weekend off. If the Hospital requires a Regular employee to work three (3) or more consecutive weekends in a row, the employee will receive an additional day of paid vacation for work performed on the third (3rd) consecutive weekend and for each succeeding consecutive weekend until granted a weekend off. This does not apply to Regular employees who desire a schedule which includes weekend work, including employees who work in departments which have elected to waive the provisions of this Section. It also does not apply to Regular employees who request to work, certain weekends which make up a portion of the three (3) consecutive weekends.

b) Eighty (80) Hour Option. It is understood that to grant every other weekend off in a department it will be necessary to rotate days off for all Regular employees in that department. To facilitate that, there will be no restrictions on split days off, and the Hospital may utilize back-to-back work weeks and the eighty (80) hour option under the Fair Labor Standards Act for the purpose of computing overtime as described in Section 1, Employee Work Schedules and Overtime of this Article.

c) Request For An Election. The practice of any department of rotating every other weekend off as of the date of this Agreement shall not be changed unless

the Union or the Hospital requests in writing an election for such change. If such election is requested, the Regular employees in a department will be given the opportunity to elect to waive the provision of (a) under this Section so that it will have no application to their department. The practice shall not change until the department employees have voted to do so in an election. The provision of (a) under this Section shall not apply to any department which is not rotating weekends until such election is held.

d) Election. Voting shall be held in the November immediately following the request. It will be conducted by the Labor/Management Committee provided in Article XIII. The departmental units for purposes of the voting shall be determined by the Labor/Management Committee. The results of the vote shall be determined by a simple majority of Regular employees voting. Employees from all shifts in each department shall vote as one unit, and the decision whether or not to waive the provision of (a) under this Section must be the same for all shifts.

e) Implementation. The decision of the employees in a department to rotate weekends off or waive the provision of (a) under this Section shall be implemented no later than one (1) month after the election is held. That practice may only be changed by another vote of the employees within the department in a subsequent November.

f) Definition of Weekend. A weekend means Saturday and Sunday, except that in the case of a defined night shift, it means Friday and Saturday.

Section 8.    Shift Rotation

Current rotating shifts may be continued, except that any complaint with respect to such rotation may be submitted to the Labor/Management Committee. The Hospital shall be allowed to establish new rotating shifts for the following purposes or under the following circumstances: Training of employees, relief, emergencies, consent of the employees, layoffs, and employees hired specifically for rotation. Any new rotation of shifts is subject to mutual agreement between the Union and the Hospital.

Section 9.    Additional Shifts Premium

Part-time LVNs, Respiratory Care Practitioners, Licensed Psychiatric Technicians, Surgical Technicians, and Perinatal Technicians who comply with the Hospital's eligibility requirements for additional shifts, for which an overtime premium is not required, will receive a minimum of two dollars ($2.00) per hour for all hours worked on any additional shift.

Section 10. Mandatory Overtime

The Hospital will not assign mandatory overtime, effective January 31, 2002, unless one of the following conditions occur:

a. State of Emergency declared by City, County, State or Federal authorities;

b. Internal or external disasters;

c. During any period where critical care or total diversion is suspended by EMS

Mandatory overtime will be assigned to the least senior scheduled qualified employee working in the affected unit and then on a rotational basis. An employee may refuse a mandatory overtime assignment due to a valid reason once per calendar year, unless all available qualified staff members have refused the overtime assignment. Assuming than an emergent situation does exist, an employee who works a full eight (8) hour mandatory overtime shift may elect to have the next scheduled shift off if that shift occurs the following day.

## ARTICLE VIII          EMPLOYEE BENEFITS

### Section 1      Vacations

(a) <u>Annual Vacation.</u> All Regular employees covered by this Agreement who have been continuously in service for one or more years as Regular employees are entitled to annual vacation with pay.

| Continuous Length of Service | Annual Vacation |
| --- | --- |
| one (1) year | two (2) weeks |
| two (2) years | three (3) weeks |
| five (5) years | four (4) weeks |
| ten (10) years | five (5) weeks |

(b) <u>Accrued Vacation.</u> Annual vacation is accrued proportionately over the anniversary year, in equal amounts by pay period. The vacation accrual on any date is that portion of the annual vacation which has been accrued to that date, plus any remaining vacation from prior years, which has not been paid.

(c) <u>Vacation Pay.</u> Employees' vacation pay shall be equal to their regular straight-time pay for their regular schedule of work, including applicable differentials,

provided that the amount paid may not exceed the amount of vacation accrued at the time the vacation is taken.

(d) <u>Holidays.</u> If a holiday, as described in Section 3 (a) of this Article occurs during an employee's vacation, he/she shall be paid for the holiday.

(e) <u>Vacation Scheduling.</u>

(1) Regular employees shall submit their vacation preferences in writing to their supervisor by February 1 of each year (September 1 beginning in 2002). They must schedule their annual vacation allotment.

(ii) Employees with one (1) or more years of service may, with the written consent of their supervisor, be allowed to take not more than one (1) week of their vacation in smaller increments. Requests to do this must be submitted as part of the vacation preferences by February 1 (September 1 beginning in 2002). The employee must request specific use of this time at least one week in advance of the date requested. Approval is subject to the staffing requirements of the department, and is subordinate to all previously scheduled leaves.

(iii) If the staffing requirements of a department do not permit all employees requesting a certain vacation preference to take their vacations at the same time, seniority will be the determining factor within each classification within the department.

(iv) Vacation preference will not be unreasonably denied because of the season of the year.

(v.) The Hospital will post the vacation schedule for each department by March 1 of each year (October 1 beginning 2002).

(vi.) If an employee's accrued vacation is less than the amount of scheduled vacation at the time of that vacation the scheduled vacation will be reduced accordingly, from the end.

vii.) During the transition from February/March to September/October request and posting periods, requests made in February of 2002 will be only for the period through September 2002.

(f) Vacation During the First Year of Employment. An employee may take one (1) week of vacation after completing six (6) months of employment. An employee may exercise this option by submitting a vacation request, and having it approved by his/her supervisor. Approval is subject to the other provisions of this Section.

(g) Vacation Pay Advances. An employee may request vacation pay for all or part of the vacation time being taken, to be available on his/her last working day prior to vacation. The request must be made in writing and submitted to the Payroll Office, two (2) weeks prior to that date. All deductions normally taken will be subtracted in calculating the amount of the vacation pay.

(h) Other Use of Vacation Accrual. Employees who have held their Regular positions at least six (6) months may request to use their vacation accrual when they have been granted leaves of absence which would otherwise

44

be unpaid. These would include: Medical leave in excess of accrued sick leave, leave to care for dependent family members, and emergency leave. Employees who wish to exercise this option must notify their supervisor at the time their leave is approved. The accrual may not be used for sick leave uncompensated under Section 2 (b) of this Article, or for unapproved absences.

(i) Illness During A Vacation. An employee who is hospitalized during his/her vacation may use unused sick leave in lieu of vacation, provided that Hospital and Department policies with respect to notification of the employee's supervisor are followed during the illness.

(j) Unused Vacation At Time Of Reclassification. An employee who transfers from a Regular position to a Short-Hour, Temporary or Casual position will be paid for all unused vacation accrued to the date of reclassification. The unused vacation accrued by an employee who transfers between Regular Full-Time and Regular Part-Time positions will be unaffected. The continuing accrual rate will be based on the scheduled hours of the position to which an employee transfers.

(k) Vacation Upon Termination/Separation. An employee shall be paid any earned and accrued vacation at the time of his/her termination/separation from the Hospital.

Section 2.    Sick Leave

(a). Accumulation of Sick Leave. Each Regular employee shall accumulate one (1) day's sick leave with pay for

45

each calendar month of employment. Unused sick leave shall accumulate up to a maximum of ninety (90) days.

Regular Part-Time employees shall accumulate pro-rated sick leave based on the employees' regular scheduled hours.

(b). Eligibility And Waiting Period For Sick Leave. A Regular employee shall not be entitled to sick leave with pay until he/she has been employed for a period of ninety (90) days; however, such employees shall be credited with three (3) days of sick leave upon completion of ninety (90) days of service, but sick leave shall not be retroactive to any absence due to sickness during the first ninety (90) days of employment

Regular employees who have completed ninety (90) days of service but fewer than twelve (12) months shall not be paid for the first day of each absence due to illness. Such absences shall not be counted against accumulated sick leave. There shall be no waiting period in cases of absence due to on-the-job injuries. There shall be no waiting period for employees with twelve (12) or more months of service.

(c). Days Paid For Sick Leave And Rate of Pay For Sick Leave. Sick leave shall be applicable only if the employee is ill on days during which he/she is normally scheduled to work. Pay for sick leave shall be paid at that rate of pay which the employee would have received had he/she worked his/her regular straight-time schedule that day.

(d). Reasonable Proof. Where the employee's absence from work is for a period of more than three (3) days the

Employer may require reasonable proof of physical disability sufficient to justify the employee's absence from work for the period claimed.

(e). Questionable Pattern Of Sick Leave Usage. A questionable pattern of sick leave usage means that the Employer has a reasonable basis for questioning the legitimacy of the claim, regardless of the period of absence. The Employer may consider, among other things, such matters as the number of occasions of sick leave usage, the number of days taken, the relation between sick leave usage and other paid or unpaid absences for illness, and the number of unpaid absences for illness.

(f). Reasonable Proof In Cases of A Questionable Pattern. If the employee's record demonstrates a questionable pattern of sick leave usage, the employee may be counseled by the Employer at the Employer's option. Thereafter, if the employee continues a questionable pattern of sick leave usage, the Employer may request reasonable proof of disability for future days claimed, and/or take disciplinary action as deemed appropriate. Reasonable proof may include but is not limited to verification by a physician selected by the Employer or by the Hospital's Employee Health Services, and/or other proof acceptable to the Employer.

(iii). Doctor's Certificate Required. The Employer may require a doctor's certificate as proof of physical disability where there is a questionable incident of sick leave usage (for example, an employee asks for a day off, is denied, and calls in sick on the day he/she requested off).

(f) **Pay If Sick Leave Occurs On A Holiday.** If an employee is absent on paid sick leave and a holiday occurs during such absence, he/she shall receive the holiday pay and the day shall not be charged against his/her sick leave credits.

(g) **Integration of Sick Leave With Disability Benefits.** The payment of sick leave shall not affect or limit an employee's right to the full weekly disability benefits to which he/she may be entitled under the California Unemployment Compensation Act. In cases where an employee is eligible to receive disability benefit payments, the employee shall receive the full disability benefit payment plus such portion of his/her earned sick leave pay that shall aggregate to an amount equal to but not exceeding the employee's regular rate of pay. In cases of industrial injury entitling an employee to workers' compensation insurance payments, the same method of integration with sick leave shall apply.

**Section 3.    Holidays**

(a) **Regular holidays.** The following holidays are recognized.

New Year's Day    Christmas
Memorial Day    Independence Day
President's Day    Employee's Birthday (refer to [b] below)
Labor Day    Floating Holiday (refer to [c] below)
Thanksgiving Day    Martin Luther King Jr.'s Birthday

Except as provided in (b) and (c) below:

(i) **Waiting Period.** All Regular employees are eligible to take these holidays off with pay after a qualifying period of thirty (30) calendar days of continuous service from the last date of hire.

48

(ii) **Rate Of Pay For Holiday And Election of Day Off.** All employees who work on a holiday shall be paid at the rate of one and one-half times the basic straight-time hourly rate. In addition, a Regular employee shall be paid holiday pay or, upon mutual agreement between the supervisor and the employee, elect another day off. If the holiday falls on the employee's regular day off, the employee will receive holiday pay or, upon mutual agreement between the supervisor and the employee, elect another day off. For clerical classifications, if a holiday falls on a weekend, the Hospital may require the employee to take the Friday or Monday closest to the actual holiday as the holiday.

**Relief for Requested Holidays Off and Additional Vacation Days.** Two (2) weeks prior to the posting of the schedule in a department, the Employer will grant requested vacation days or holidays off by seniority, provided they do not conflict with time off previously granted to other employees. After the schedule is posted the employee may have to find his/her own relief if the Employer is unable to get relief for the requested time off for vacation or holidays.

(b) **Employee Birthday.** After a qualifying period of ninety (90) days from the last hire date, a regular employee is eligible to take off his/her birthday with pay. An employee may substitute another day by mutual agreement with his/her supervisor. An employee will be paid the straight-time rate for working on his/her birthday.

(c) **Floating Holiday.** After a qualifying period of ninety (90) days from the last hire date, a regular employee is eligible for one (1) floating holiday per year, beginning

49

procedure, not including arbitration, arising out of the employee's employment and in which the employee is not a party) will receive the difference between jury pay or witness fees and normal straight-time earnings. As a condition to jury duty pay, the employee must notify the Employer as soon as reasonable after he/she receives notice to report (normally within 24 hours). Also as a condition to receiving jury duty pay, the employee must produce a receipt from the Jury Commissioner that he/she has been called or served, if such receipts are provided.

### Section 6.    Accrual

(a) Employees on paid vacation, holiday, sick or other paid leave continue to accrue all benefits and seniority.

(b) Regular Part-Time employees accrue vacation, sick leave and holiday benefits prorated on the basis of their regular work schedule.

### Section 7.    Leave of Absence

(a) Request for Leave: A request for a leave of absence shall be submitted in writing at least two (2) weeks prior to the requested leave, except in cases of emergency. Any grant or denial of a leave will be in writing.

(b) Physical Disability Leave of Absence: Any Regular employee who has completed his/her probationary period with the Employer shall be entitled to a disability leave of absence on proper proof that he/she needs such leave for the purpose of the treatment and/or recovery of a physical disability. Such leave shall not be for more than six (6) months. It may be extended only by agreement between the employee and

Employer. The Employer may require the employee to submit periodic proof of continued disability for disability leaves extending for more than thirty (30) days.

(c) Industrial Leaves of Absence: As an exception to paragraph (b) above, a leave of absence for an industrial injury or illness may extend for more than six (6) months.

Employees on Industrial Leaves of Absence may be required by the Employee Health Department to participate in periodic status reviews involving the Employee Health Physician, the employee and, as necessary, the treating physician.

(d) Other Leaves of Absence:

(i) Leaves of absence for other reasons, including Family Leave, shall be granted by the Employer in compliance with applicable state and federal laws.

(ii) A personal leave of absence shall not be unreasonably denied because of the season of the year.

(e) Non-forfeiture of Accrued Rights: By reason of such leave of absence the employee shall not forfeit any rights under this Agreement, but likewise he/she shall not accrue any benefits during such leave.

(f) Return to duty: When an employee returns from a leave of absence not exceeding thirty (30) calendar days in compliance with the approved terms of the leave, such employee shall be assigned to the same

classification, position, unit and shift he/she held before the leave.

Before an employee's return from any leave of absence in excess of thirty (30) days he/she may be requested to be cleared for work by the Employee Health Physician depending on the reason for the leave, travel out of the country and other events which, in the opinion of the Hospital, require such examination.

If the leave is in excess of thirty (30) days and the employee returns in compliance with the approved terms of the leave, the Hospital will use its best efforts to, and will not unreasonably deny return of the employee to the same classification, position, unit and shift.

(g) **Replacements.** A person hired or assigned as a replacement for an employee on a leave of absence shall be so advised by the Hospital.

**Section 8.    Group Health, Dental and Vision Benefits**

a) The Hospital will provide group health and dental benefits to Full-time and Part-time employees, their spouse or domestic partner, and their eligible dependents at no cost to the employee, except for applicable co-pays (e.g. prescriptions, doctor visits etc.)

(b) Coverage shall begin the first of the month following the completion of the ninety (90) day probationary period provided the employee is actively at work. If the employee is not actively at work, coverage will begin the first of the month following the employee's return to active duty.

54

(c) Coverage will cease the last day of the month in which the employee terminates employment with the Hospital.

(d) The Health plan known as the St. Luke's Health Benefits Plan shall provide health, vision and prescription drug benefits.

(e) The Dental Plan will be the Delta Plan with a $10.00 one-time deductible.

(f) Employees on unpaid leaves of absence of thirty (30) or more days shall bear the full cost of health and dental coverage and shall submit payments to the Hospital prior to the tenth of each month.

(g) The Hospital will continue coverage of an employee disabled for work by a job-connected injury or illness as determined by the Workers' Compensation Appeal Board during such disability up to a maximum of twelve (12) months.

**Section 9.    Group Life Insurance**

The Hospital will provide each Regular employee with $10,000 Group Life Insurance and $10,000 accidental death and dismemberment insurance coverage. The cost will be paid by the Hospital. Coverage will become effective on the first of the month following completion of ninety days (90) of continuous employment, or completion of the probationary period, whichever is later.

**Section 10.    Retirement Plan**

The Employer will continue to provide the benefits set forth in the "Retirement Plan for Hospital Employees", as

55

amended and restated effective December 31, 1992. Plan provisions will be amended, when required, to conform with the Federal law covering group employer pension plans. Both the Hospital and the Union agree to be bound by this Plan as presently in effect, and as hereafter amended in accordance with law and its provisions relevant to amendment.

## Section 11.   Flexible Spending Account Program/Salary Reduction for Dependent Care

All employees covered under the terms of this Agreement shall be eligible to participate in the St. Luke's Hospital Dependent Care Assistance Program.

The Hospital will establish a flexible spending account benefits program for employees (a tax deferred program for health and dependent care expense).

## Section 12.   Physical Examinations

Physical examinations may be required by the Employer. The physical examination shall be given without charge, and all costs incident to these examinations shall be borne by the Hospital. They may include a routine chest film and/or tuberculin test and routine diagnostic laboratory tests, all to be as determined by the Hospital or any applicable law. However, upon the employee's request, a pap smear and/or sickle cell anemia test will be included in the examination.

## Section 13.   Job Related Education Leave and In-Service Education

(a)   Offer of Training/Entitlement/Application.   The Hospital will exercise its best efforts to offer ongoing education and training to its employees. The Hospital

56

will comply with regulatory requirements for employee education and training. Employees with classification or job required licenses/certifications shall be entitled to forty (40) hours job related educational leave with pay each fiscal year to attend courses, institutes, workshops or classes of an educational nature provided:

(i)   The employee applies in advance in writing specifying the course, institute, workshop or class he/she wishes to attend;

(ii)   The employee obtains permission from his/her supervisor to attend; and

(iii)   Such leave shall not interfere with staffing.

(b)   Proration.   Educational leave shall be extended on a prorated basis to Regular Part-Time employees.

(c)   Permission.   Permission for such education leave will not be unreasonably denied. If an employee submits a written request for education leave at least one (1) month in advance, the Hospital will notify the employee in writing at least two (2) weeks in advance whether the requested leave will be permitted or denied. If an employee submits such a request less than one (1) month in advance, the Hospital will respond as soon as is practicable.

(d)   Eligibility.   To be eligible for job related education leave, the Full-Time employee in the Nursing Department must be employed prior to October 1 of the year in question. If he/she is employed on or after October 1, he/she qualifies for job related education leave in the following calendar year.

57

(e) **Waiver/Accumulation.** An employee who qualifies for job related education leave and does not apply for it, waives it for that year. If such employee requests job related education leave and does not receive it in a particular year for which he/she is qualified, the employee may accumulate it for the following year. If the Hospital wishes, the employee to engage in an outside educational program, the Hospital and the employee may mutually agree that this is charged against the employee's job related education leave. If the employee declines to engage in such educational program, the Hospital has the option to withdraw the request or to require the employee to engage in such program, in which event it is not charged against his/her job related education leave.

(f) **Home Study.** At the option of the employee, who qualifies for education leave, one (1) educational leave day per year may be used for home study courses with a minimum of fifteen (15) CEUs. The course shall be approved prior to scheduling the educational leave and the employee shall provide proof of course completion.

(g) **Program Availability.** When the Hospital provides an in-service education program for employees in a particular classification or classifications under the Agreement, the Hospital will use its best efforts to see that the in-service education sessions are available to all employees in such classification or classifications on all shifts. In the event that such best efforts are unsuccessful, the Hospital will meet with the Union for the purpose of working out a mutually acceptable solution.

58

(h) **Certified Nursing Assistants.** This provision shall not apply to Certified Nursing Assistants provided the Hospital continues to offer sufficient and adequate courses for such employees to maintain their certification.

## Section 14.    Safety

The Hospital will comply with applicable federal and California laws and regulations pertaining to occupational safety and health. Likewise, it is the duty of each employee to comply with all health and safety regulations of the Employer. In the event any safety or health hazard is detected, it shall be promptly reported to the Employer. The Employer shall then have a reasonable period of time to remedy the situation. An employee who fails to promptly report a detected health or safety hazard may be subject to disciplinary action, however no employee will be subject to disciplinary action for reporting a health or safety hazard.

If the Union detects a health or safety hazard, it will promptly report such hazard to the Hospital. The Hospital will make every effort in so far as it is able, to inform and protect employees from a known safety hazard. The Hospital recognizes that an employee should not be required to work under hazardous working conditions. If the employee identifies a safety or hazardous condition that directly affects his/her working environment, he/she must contact the supervisor on duty to discuss how to proceed. If an employee refuses to work without involving his/her supervisor, he/she will be subject to disciplinary action.

The Hospital will have a reasonable period of time to remedy all health and safety problems or situations brought to its attention by employees or the Union.

59

**Section 15.    Military Leave**

The Hospital will comply with the provisions of the Veteran's Re-employment Rights Act. An employee, who is unable to report for regularly scheduled work because the employee is required to report for active duty with the California National Guard or a reserve unit of the United States military, shall be granted a leave of absence commensurate with the orders received, and will not forfeit any rights as a result of this leave. Employees will be permitted to use previously accrued vacation and holiday pay for this leave.

**ARTICLE IX    FIELD    REPRESENTATIVES    AND SHOP STEWARDS**

**Section 1.    Field Representative's Rights**

A duly authorized representative of the Union shall be permitted to enter the Hospital at reasonable times for the purpose of observing whether this Agreement is being observed or to check upon complaints of employees, provided:

(a)    This privilege is exercised reasonably;

(b)    The Union Representative advises the Director of Human Resources of the Hospital or his/her designee immediately upon entering the Hospital;

(c)    The Union Representative in advance advises the Director of Human Resources of the Hospital or the Director's designee as to which departments or areas he or she wishes to visit, and confines the visit to such departments or areas as agreed upon;

(d)    The Union Representative confers with employees, including shop stewards, only upon their own free time and in public areas within the Hospital, such as cafeterias or coffee shops or in designated non-work areas;

(e)    The Union Representative does not interfere with the work of any employee.

Paragraph (d) above does not prevent a Union Representative from conferring with an employee and his/her supervisor or a Hospital Representative on Hospital time in connection with a complaint or problem concerning the employee.

Paragraph (c) above is to be administered in good faith and in a reasonable manner by the Hospital.

**Section 2.    Shop Stewards**

(a)    Number of Stewards and Notification to the Hospital. The Union may appoint the number of shop stewards it deems necessary to conduct Union business. The Hospital will be notified in writing of such appointments.

(b)    Functions of Steward.  The function of the Union Steward shall be to assist in settling problems arising in connection with the application or interpretation of this Agreement. Shop Stewards may resolve grievances through step 2 of the grievance procedure, but may not by their agreement, set precedent for future cases or bind the Union to a specific interpretation/application of the Collective Bargaining Agreement unless such agreement is reduced to writing and signed by the authorized field representative.

(c)  **Outside of Working Hours.** The Shop Steward shall perform his/her function outside of his/her working hours on his/her own time.

(d)  **Non Interference With Operations.** The Shop Steward shall not direct any employee how to perform or not perform his/her work, shall not countermand the order of any supervisor, and shall not interfere with the normal operations of the Hospital or any other employee. His/her activities as Shop Steward shall in no way interfere with his/her assigned duties as an employee.

(e)  **Stewards at Grievance Meetings.** The Hospital's designated representative is only required to meet with one (1) Shop Steward on any grievance.

**Section 3.    Employee Representatives of Union Negotiation Committee**

Employees appointed or elected to the Union's negotiating committee, not to exceed four (4) in number, who miss time worked from their regular work schedule due to contract openings, scheduled joint negotiating sessions or caucuses held in lieu thereof shall suffer no loss of wages, seniority or paid leave credits thereby.

The Hospital will provide up to three (3) days without pay per year for all stewards to allow them to participate in Union educational programs and other official Union activities. Such days shall be granted:

(i)  provided the Hospital is given reasonable notice, and

(ii)  subject to the Hospital's staffing requirements.

**Section 4.    Weingarten Rule**

The following holding of the United States Supreme Court in NLRB vs. Weingarten, Inc. shall apply to investigatory interviews conducted by the Hospital: that an employee, upon his or her request, is entitled to have a Union Representative (Field Representative or Shop Steward) present during an investigatory interview in which the employee is required to participate where the employee reasonably believes that such investigation will result in disciplinary action. The right to the presence of a Union Representative (Field Representative or Shop Steward) is conditioned upon a requirement that the Union Representative (Field Representative or Shop Steward) be available for participation in such an investigatory interview within twenty-four (24) hours, excluding Saturday, Sunday and holidays, of the employee's request for his or her presence.

**Section 5.    Corrective Actions**

A Corrective Action is a written disciplinary action. An employee who receives a Corrective Action shall be given a copy of it and shall sign a receipt to acknowledge having received the document. Acknowledging receipt of the Corrective Action shall not constitute an admission of the employee's agreement with its substance. A Union grievance contesting Corrective Actions, except those designated as oral, shall be subject to the requirements of Article XI Grievance Procedure.

**ARTICLE X    COMPLAINTS**

Experience shows that nearly all the questions which may arise under this Agreement can be settled without following

the formal grievance procedure. If any employee believes he/she has any claim or complaint, it is recommended that he/she talk it over first with his/her supervisor. However, this is not required. If he/she prefers, the employee may first consult with a Union official or present a claim or complaint. There will be no retaliation against any employee for doing any of these things.

If an employee has any complaints which he/she thinks have not been properly considered by his/her supervisor, it is agreed he/she has the right of conference on the subject with the President of the Hospital, or his/her designated representative. At this conference, the employee may be accompanied by a Union official.

## ARTICLE XI    GRIEVANCE PROCEDURE

### Section 1.    Employee Grievance

Included among the subjects upon which conferences may be requested are problems relating to verbal and written verbal warnings, work loads and adequate staffing. It is agreed that such cases of subjects are not subject to the provisions of Article XI, except as otherwise specifically provided in this Agreement.

If an employee or the Union has a grievance or complaint concerning the interpretation or application of the terms of this Agreement, including a discharge case, it shall be taken up in this manner:

STEP 1.   The employee shall first confer with his/her supervisor or such other person as the Employer may designate.

STEP 2.   If the grievance or complaint is not thus settled, it shall be set forth in writing by the Union and submitted to the Hospital. The authorized representative of the Union shall then confer with the CEO of the Hospital or his/her designated representative and attempt to settle the matter. In making such an attempt there shall be a full and frank disclosure by both the Hospital and the Union of their position with respect to the grievance, including the supporting rationale for the position taken. If the efforts to resolve the grievance in this matter are unsuccessful, either party may request that the matter be referred to an Adjustment Board. The request for an Adjustment Board must be made to the other party within fifteen (15) days of the receipt by the Hospital of the written grievance.

STEP 3.   Upon receipt of a timely, written request, there shall be an Adjustment Board established consisting of two (2) Field Representatives designated by the Union and two (2) representatives designated by the Hospital. The Adjustment Board shall meet within ten (10) days of receipt of the request for its establishment and shall consider fully all aspects of the issues presented. Any decision by a majority of the four (4) members of the Adjustment Board shall be final and binding upon all parties. If, during the period that the Adjustment Board can meet, no majority decision is reached, either party may request in writing that the matter be referred to Step 4, provided that if such request is made, it must be made within ten (10) days following the meeting of the Adjustment Board, or the right to proceed to arbitration shall be waived.

STEP 4.   Arbitration:   If any such grievance or complaint has not been settled by any of the procedures

described, the question may, at the request of either party be submitted to arbitration by any arbitrator to be selected by the representatives of the Hospital and the Union. The award of the arbitrator shall be final and binding on all concerned. The arbitrator may award damages for any breach of this contract. The Hospital and the Union shall each pay one-half (1/2) of the costs of arbitration, including the fees of the arbitrator and other expenses of the arbitration proceeding, but not including compensation of costs of representation, advocacy or witnesses for either party.

<u>Section 2.    Time Limits</u>

No grievance or complaint shall be considered unless it has first been presented in writing in Step 2 within thirty (30) calendar days of the alleged occurrence thereof.

If the Hospital does not meet the above described time limits and respond to the grievance within thirty (30) days of receipt, the grievance will be decided in favor of the Union, provided the Union has submitted the grievance to Human Resources and the grievance has been signed by a staff person of Human Resources (Certified, if by mail).

<u>Section 3.    Power of Arbitrator</u>

The arbitrator shall have no power to add to, to subtract from or to change any of the terms or provisions of this Agreement. His/her jurisdiction shall extend solely to claims of violation of specific written provisions of the Agreement and involve only the interpretation and application of such Agreement. The award shall be based upon the joint submission agreement of the parties, or in the absence thereof, the questions raised by the parties in respect to the specific interpretation and application of the

Agreement. Without limitation upon the foregoing, if either party shall give notice of a desire to modify this Agreement as provided in Article XIV, the arbitrator shall have no power to determine what modifications or changes, if any, should be made in the Agreement or otherwise to decide any question with respect thereto, other than the sufficiency and effect of the notice itself.

<u>Section 4.    Employee's Personnel Files</u>

With respect to a particular complaint or grievance of an employee concerning the interpretation or application of this Agreement, and on the employee's authorization, the Field Representative of the Union may inspect relevant material in the employee's personnel file upon which the Hospital is or will be relying.

<u>Section 5.    Employee Participation</u>

The Employer and the Union agree that the employees should be free to participate on behalf of any party in all steps of the Grievance and Arbitration Procedure, and should be free from recriminations from either side for so doing.

ARTICLE XII    NO WORK STOPPAGE

There shall be no strike, work stoppages or interruptions of work by the Union or employees represented by the Union during the life of this Agreement. There shall be no sympathy strikes by the Union and/or employees.

Similarly, there shall be no lockouts by the Hospital during the life of this Agreement.

# ARTICLE XIII    LABOR MANAGEMENT COMMITTEE

Two (2) Labor Management Committees shall be established for the following groupings of employees:

1. Service and Maintenance
2. Clerical

They shall serve in an advisory capacity to discuss issues such as:

- employee morale
- changes in the Hospital operations
- recruitment and retention issues
- changes in job descriptions
- cross training

The discussions shall take place in a positive and non-threatening environment, and the issues discussed are not subject to the grievance procedure.

The committees shall meet every month or less often if mutually agreed. The committees shall consist of no more than three (3) employees covered by the Agreement plus a maximum of one (1) union selected Field Representative, and up to four (4) representatives selected by the Hospital. Agenda items shall be submitted to the Field Representative and the designated Hospital representative, at least four (4) working days prior to the meeting, unless waived by mutual agreement. Meetings shall be scheduled for one (1) hour to not more than three (3) hours per month. Employees scheduled to work during the meetings will be paid at straight time.

No agenda item will be considered unless the issue has first been discussed with the appropriate Hospital manager. Upon mutual agreement, one party or both may bring additional members to the meeting for the purpose of clarification of issues, or providing expert, or pertinent input.

## ARTICLE XIV    JOB SECURITY

**Section 1.    No Subcontracting**

(a)    The Hospital agrees not to contract out any work currently performed by Local 250 employees in service and maintenance classifications.

(b)    The Hospital agrees not to contract out any work currently performed by Local 250 employees in clerical classifications, except where past practices are in effect.

The Hospital will exercise every effort to avoid layoffs, and insofar as it is able, will provide job security to bargaining unit employees.

**Section 2.    Mergers, Sales, Closures and Transfers**

In the event of a merger, sale, closure, leasing, assignment, divestiture or other transfer of ownership and/or management of the Hospital's operation in whole, the Hospital will comply with the following:

(a)    Notification. The Hospital. The Union shall be notified in writing by the Hospital as soon as possible but, in any event, not less than sixty (60) days prior to completing any action as described in this subsection of the collective bargaining agreement.

(b) Successor. This Agreement shall be binding upon the Union and the Hospital and any successor thereof, whether by succession or by any other means referred to above, as it applies to the business of the Hospital, in whole or in part, or to any change in management companies.

(c) Conditions of Liability. In the event the Hospital desires to engage in any acts set forth above and covered by the Agreement, it shall be a condition of sale or management contract that this collective bargaining agreement and all the obligations thereof shall be binding upon the purchaser or transferee.

Section 3.    Laid Off Workers.

Where the Hospital has laid off a bargaining unit employee, or group of employees, the Hospital will grant the following to the employee(s) to be laid off:

(a). Vacancies Held Open. After all regular employees in the bargaining unit have bid for any available position in conformance with the bidding process described in the collective bargaining agreement, and a vacancy or vacancies still remain unfilled, the Hospital will fill such vacancies for up to ninety (90) calendar days with Short Hour (Limited Part-Time), Casual and, as a last resort, Temporary employees, provided that

(i)    There are regular employees, or permanent layoff, or currently on such status, who are interested in applying for the vacancies, and who thereby notify the Hospital in writing and

(ii)    These employees interested in the vacancies have

begun or will begin training for the new position as provided herein and will have completed such training within ninety (90) calendar days of the original posting of the remaining vacancy. Newly trained employees will be given the orientation or proctoring, as necessary, depending on the certification or licensure of the available position.

(b) In the event an employee is subject to layoff and there exists

(i)    a vacancy, or
(ii)    a position into which an employee may be eligible to bump or displace a less senior employee (in conformance with the layoff provisions of this collective bargaining agreement).

The job has to be one where, in the Hospital's judgment, a person without experience can become competent to perform the job within a thirty (30) calendar day period.

The Hospital agrees to provide up to thirty (30) calendar days on-the-job training so that the affected employee may continue to work. Bargaining unit employees who successfully complete training will be considered, for all intents and purposes, eligible and qualified for available positions and will be awarded such positions in conformance with the preference order of the job bidding provisions of the collective bargaining agreement.

Section 4.    Career Development Opportunities

The Hospital will establish a career Development Opportunities Program to offer regular Full-Time and Part-Time employees career advancement opportunities for educational courses and programs of study in the health care

field, including certification and licensures (LVN, CNA, RCP, etc.) which would qualify them for transfers and promotions in the Hospital. This program is in addition to any educational leave to which an employee may be entitled.

(a) **Proposals.** Employees must submit their proposals to the Director of Human Resources in writing. The proposed course of program of study must relate directly to positions at St. Luke's. Proposals will be considered on a first-come, first served basis.

(b) **Approval.** Proposals submitted under this section require pre-approval from the Hospital, which shall not be unreasonably denied. Application for tuition reimbursement shall be submitted by June 15 of each year. Where more, employees have expressed an interest in participating in the plan than is financially feasible, eligibility among those who have applied by June 15 shall be determined by seniority. After that date, eligibility shall be determined on a first-come, first-served basis

(c) **Expenses.** The Hospital will reimburse each employee pursuing a job related approved course or program of study up to $650 annually for tuition, books, supplies and uniforms paid by the employee for the program. A payment will be made after successful completion of the course (a grade of "C" or better), based on documentation (e.g., canceled check, credit card receipts,) of the employee's payment of the related expenses

(d) **Scheduling Accommodation.** The Hospital will make reasonable accommodations, consistent with Hospital staffing requirements to allow regular employees to decrease their regular/scheduled hours to a minimum

72

of forty (40) hours per pay period. Requests for reductions in hours shall be submitted in writing, at least four (4) weeks in advance of the requested change in hours. Any grant or denial of the change will be in writing. If the approved schedule change exceeds a period of thirty (30) calendar days, the employee's prorated accrual of vacation, sick and holiday benefits shall be based on the new schedule. At the end of an approved schedule change which does not exceed thirty (30) days, the employee shall be assigned to the same classification, position unit and shift he/she held before the change. If the schedule change exceeds thirty (30) days, the Hospital will use its best efforts to return the employee to the same classification, position, unit and shift he/she held before the change.

(e) The Employer will provide a maximum of $10,000 per calendar year for expenses as set forth in(c) above.

# ARTICLE XV    PATIENT CARE COMMITTEE

Section 1.    Establishment of Committee.

The Employer and the Union agree that quality patient care and an appropriate working environment require adequate staffing and that staffing levels within all departments vary with census, acuity, shift, the specialization of various areas, changes in the specialization of units, structural changes in delivery of patient services, and qualitative changes in average acuity. The Employer will establish a Patient Care Committee composed of up to five (5) SEIU bargaining unit employees, but not fewer than three (3) employees selected by the Union. The Hospital will select other staff members from nursing and other services not necessarily covered by a bargaining unit agreement. Leadership Team members will

73

also be included. The total number of committee members will not exceed ten (10), but must have at lest six (6) members. Both sides will have equal numbers. Members of the committee may change according to the issues being discussed.

a. The purpose of this committee is to provide information and recommendations to the Leadership Team in order to improve patient services in the context of work design, if applicable, or in the current method or system of patient care delivery.

b. The Employer will allow two (2) hours per month for these meetings.

c. Two (2) weeks prior to a meeting, the Union and the Employer will submit agenda items to each other.

d. The committee will meet no later than thirty (30) days after ratification. The committee will give its staffing recommendations to the Employer within six (6) months of the beginning of the meetings.

Section 2.    Patient Review Committee.

(a). At the request of either party, a difference of opinion between the representatives of the Patient Care Committee shall be referred to the Patient Care Review Committee. The Patient Care Review Committee will be the exclusive means for resolving such difference of opinion and shall be composed of: Four (4) members of the Hospital's Management Team and equal number of representatives of Local 250, one of whom will include the President or Senior Staff member of Local 250.

74

(b). A meeting shall be held within ten (10) days of the referral, unless the committee mutually agrees otherwise. The purpose of the meeting will be to jointly review the original problem presented by the Patient Care Committee together with a summary of the information exchanged between the parties on the problem since its original presentation and to begin joint exploration leading to resolution of the matter. The recommendation of the Patient Care Review Committee shall be reached within forty-five (45) days of the committee's last meeting regarding the issue.

(c). The decisions of the Review Committee will be made by a majority vote. A non-voting Moderator may be selected by the parties. This non-voting Moderator shall be mutually agreed upon by both parties and shall have the appropriate expertise regarding the dispute to be determined. For referrals of staffing disputes, the Moderator will have an appropriate healthcare background to permit thorough review and understanding of the facts of the dispute and needs of both parties. The costs of the Moderator, if any, will be shared equally by the parties.

Section 3.    Moderator's Non-Binding Written Recommendation.

a. In the event of a deadlock between the parties, the Moderator is empowered to make a non-binding advisory written recommendation to the parties.

b. The Hospital's decision on whether to implement the Moderator's opinion on staffing recommendations will be based upon applicable state and federal law and legitimate patient and business needs and shall not be arbitrary and capricious. All other issues brought to the

75

* The shampooing of large carpet areas, utilizing heavy equipment.

* Complete floor to ceiling whole-room washing using heavy duty equipment and supplies such as in preparation for painting.

* Washing of windows in project assignments such as a half or full floor.

* Assignment of Heavy Trash Container

* Heavy lifting of furniture (40 lbs.)

4. Team Leader Housekeeping Aide:
The Team Leader Housekeeping Aide shall receive a differential of five ;dollars ($5.00) per shift when performing in that capacity.

5. Respiratory Care Practitioner
Charge Duties. Respiratory Care Practitioners who are assigned charge duties will receive an additional $5.00 per shift.

First Year Increase (July 1, 2001) Respiratory Care Practitioners' wages will be as set forth in Appendix A only.

6. Pulmonary Functions Tech. A Respiratory Care Practitioner who is assigned to perform pulmonary functions will receive $1.50 per hour when so assigned.

80

## APPENDIX A (CONT'D)
## BARGAINING UNIT POSITIONS BY CLASSIFICATION

### CLERICAL

**LEVEL II**
File Clerk
Junior Clerk

**LEVEL III**
Data Entry Clerk
Department Clerk
Medical Records Clerk
P.B.X Operator
Purchasing Clerk
Receptionist

**LEVEL IV**
Cash Recording Clerk
Cashier
Dietary Clerk
Support Services Clerk

**LEVEL V**
Admission/Registration Clerk
Billing/Credit Balance Clerk
Collector
Customer Service Representative
Electronic Claims Processor
Emergency Services Assistant
Medi-Cal Electronic – Follow-up Clerk
Government Follow-up Clerk
Out Patient Billing/Workers Compensation Clerk
Patient Representative
Records Analyst
Star Registration Clerk
Ward Clerk

**LEVEL VI**
Accounting Clerk
Float Clerk
Lead Clerk
Legal Correspondence Clerk
MIS Support Monitor
Patient Representative/Float Clerk
Pre-Admission Coordinator
Secretary I
Ward Clerk/Monitor Tech
OR Billing
OR Computer Analyst
OR Scheduler
Service Line Representative

Coder

Transcriptionist

Secretary II
Division Secretary
Quality Assurance Assistant
Medical Staff Assistant

81

## APPENDIX A – (Cont'd)

### BARGAINING UNIT POSITIONS BY CLASSIFICATION

### NURSING, TECHNICAL SERVICE & MAINTENANCE

Endoscopy Technician
Food Service Aide
Hospital Attendant, including:
  Certified Nursing Assistant
  Hospital Assistant
  Radiology Assistant
  Transporter
  Restorative Nurse Assistant
Housekeeping Aide
Inventory Specialist
Laboratory Assistant
Licensed Psychiatric Technician
Licensed Vocational Nurse
Material Handler
Medical Assistant
Mental Health Worker
Orthopedic Technician
Perinatal Technician
Pulmonary Functions Technician
Respiratory Care Practitioner
Sterile Processing Technician
Storekeeper
Surgical Technician
Surgical Services Assistant

82

## APPENDIX A

### ST. LUKE'S WAGE SCHEDULE

(1) Effective July 1, 2001 employees will be guaranteed the following wages or a 4% increase whichever is higher.

| Classification | Start | 1 Yr. | 3 Yrs | 5 Yrs | 8 Yrs | 10 Yrs |
|---|---|---|---|---|---|---|
| Housekeeping Aide | $12.87 | 13.12 | 13.38 | 13.61 | 13.89 | 16.01 |
| Food Service Aide | 12.73 | 12.98 | 13.23 | 13.47 | 13.74 | 15.86 |
| Material Handler/Linen | 13.54 | 13.81 | 14.09 | 14.32 | 14.61 | 16.31 |
| Sterile Processing Aide | 13.54 | 13.81 | 14.09 | 14.32 | 14.61 | 16.31 |
| Sterile Processing Tech I | 14.76 | 15.05 | 15.33 | 15.57 | 15.86 | 17.61 |
| Sterile Processing Tech II | 15.33 | 15.61 | 15.88 | 16.12 | 16.40 | 18.11 |
| Hospital Attendant | 13.59 | 13.87 | 14.14 | 14.38 | 14.66 | 16.37 |
| CNA/Restorative Nursing Assistant | 14.08 | 14.37 | 14.65 | 14.89 | 15.19 | 16.94 |
| Medical Assistant | 14.79 | 15.37 | 15.85 | 16.33 | 16.67 | 17.48 |
| MHW | 14.79 | 15.37 | 15.85 | 16.33 | 16.67 | 17.48 |
| Inventory Specialist | 17.90 | 18.24 | 18.63 | 18.98 | 19.35 | 19.96 |
| Laboratory Assistant I | 13.38 | 14.03 | 14.72 | 15.46 | 16.23 | 17.01 |
| Laboratory Assistant II | 14.18 | 14.87 | 15.60 | 16.39 | 17.20 | 18.03 |
| Ortho Tech | 18.68 | 19.03 | 19.45 | 19.81 | 20.20 | 20.83 |

83

| Classification | Start | 6 Mos. | 1.5 Yrs. | 2.5 Yrs. | 3.5 Yrs. | 4.5 Yrs. | 10 Yrs. |
|---|---|---|---|---|---|---|---|
| LVN I | 20.49 | 20.67 | 21.25 | 21.68 | 22.09 | 22.71 | 23.36 |
| LVN II | 21.51 | 21.70 | 22.31 | 22.76 | 23.19 | 23.84 | 24.52 |
| LPT I | 19.44 | 19.84 | 20.49 | 20.83 | 21.37 | 21.92 | |
| LPT II | 20.41 | 20.83 | 21.51 | 21.87 | 22.43 | 23.12 | |
| Certified Respiratory Care Practitioner | | | | | | | |
| Registered Respiratory Care Practitioner | 22.25 | 23.50 | 24.75 | 25.75 | 26.75 | 28.75 | |
| Perinatal Tech | 23.50 | 24.75 | 26.00 | 27.25 | 29.25 | 31.50 | |
| Surgical Tech I/Endoscopy Tech | 18.68 | 19.03 | 19.45 | 19.81 | 20.20 | 20.83 | |
| Surgical Tech II | 19.76 | 20.13 | 20.57 | 20.96 | 21.38 | 22.04 | |

| Classification | Start | 6 Mos. | 1.5 Yrs. | 2.5 Yrs. | 3.5 Yrs. | 4.5 Yrs. | 10 Yrs. |
|---|---|---|---|---|---|---|---|
| Surgical Services Assistant | 14.73 | 15.45 | 16.25 | 17.07 | 17.91 | 18.45 | |

| Classification | Start | 6 Mos. | 1.5 Yrs. | 2.5 Yrs. | 3.5 Yrs. | 4.5 Yrs. | 10 Yrs. |
|---|---|---|---|---|---|---|---|
| Transcriptionist | 15.67 | 16.46 | 17.30 | 18.14 | 19.05 | 19.63 | |
| Secretary II | 16.00 | 16.76 | 17.63 | 18.53 | 19.41 | 20.00 | |
| Coder II | 15.67 | 16.46 | 17.30 | 18.14 | 19.05 | 19.63 | |
| Coder I | 15.52 | 16.85 | 18.23 | 20.64 | 21.03 | 21.61 | |
| Coder VI | 15.19 | 15.98 | 16.77 | 17.64 | 18.50 | 19.04 | |
| Clerk V | 14.24 | 14.96 | 15.70 | 16.47 | 17.31 | 17.80 | |
| Clerk IV | 13.24 | 13.89 | 14.59 | 15.32 | 16.08 | 16.58 | |
| Clerk III | 12.64 | 13.25 | 13.93 | 14.64 | 15.37 | 15.81 | |
| Clerk II | 11.67 | 12.23 | 12.85 | 13.49 | 14.15 | 14.59 | |

(II) Effective July 1, 2002, all employees will receive a minimum of a 4% increase and the following will be the wage scale for listed classifications:

| Classifications | Start | 1 Yr. | 2 Yrs | 3 Yrs | 4 Yrs | 5 Yrs | 10 Yrs |
|---|---|---|---|---|---|---|---|
| Housekeeping Aide | $13.38 | $13.64 | $13.92 | $14.15 | $14.45 | | $16.65 |
| Food Service Aide | 13.24 | 13.50 | 13.76 | 14.01 | 14.29 | | 16.49 |
| Material Handler/Linen | 14.08 | 14.36 | 14.65 | 14.89 | 15.19 | | 16.96 |
| Sterile Processing Aide | 14.08 | 14.36 | 14.65 | 14.89 | 15.19 | | 16.96 |
| Sterile Processing Tech I | 15.35 | 15.65 | 15.94 | 16.19 | 16.49 | | 16.96 |
| Sterile Processing Tech II | 15.94 | 16.23 | 16.52 | 16.76 | 17.06 | | 18.83 |
| Hospital Attendant | 14.13 | 14.42 | 14.71 | 14.96 | 15.25 | | 17.02 |
| CNA/Restorative Nursing Assistant | 14.64 | 14.94 | 15.23 | 15.49 | 15.80 | | 17.72 |
| Laboratory Assistant I | 13.92 | 14.59 | 15.31 | 16.08 | 16.88 | | 17.69 |
| Laboratory Assistant II | 18.62 | 18.97 | 19.38 | 19.74 | 20.12 | 20.76 | |
| Inventory Specialist | | | | | | | |
| Medical Assistant | 15.38 | 15.98 | 16.48 | 16.98 | 17.34 | | 18.18 |
| Mental Health Worker | 15.38 | 15.98 | 16.48 | 16.98 | 17.34 | | 18.18 |
| Ortho Tech | 14.75 | 15.46 | 16.22 | 17.05 | 17.89 | 18.75 | |
| LVN I | 19.43 | 19.79 | 20.23 | 20.60 | 21.01 | 21.66 | |
| LVN II | 21.31 | 21.50 | 22.10 | 22.55 | 22.97 | 23.62 | 24.29 |
| LPT I | 22.38 | 22.58 | 23.10 | 23.68 | 24.12 | 24.80 | 25.50 |
| LPT II | 20.22 | 20.63 | 21.31 | 21.66 | 22.22 | 22.80 | 23.94 |
| Certified Respiratory Care Practitioner Registered | 23.14 | 24.44 | 25.74 | 26.78 | 27.82 | 29.90 | |

| | Start | 6 Mos. | 1.5 Yrs. | 2.5 Yrs. | 3.5 Yrs. | 4.5 Yrs. | 10 Yrs. |
|---|---|---|---|---|---|---|---|
| Respiratory Care Practitioner | 24.44 | 25.74 | 27.04 | 28.34 | 30.42 | 32.76 | |
| Perinatal Tech | 19.43 | 19.79 | 20.23 | 20.60 | 21.01 | 21.66 | |
| Surgical Tech I/Endoscopy Tech | 19.43 | 19.79 | 20.23 | 20.60 | 21.01 | 21.66 | |
| Surgical Tech II | 20.40 | 20.78 | 21.24 | 21.63 | 22.06 | 22.74 | |
| Surgical Services Assistant | 15.32 | 16.07 | 16.90 | 17.75 | 18.63 | 19.19 | |
| Secretary II | 16.64 | 17.43 | 18.34 | 19.27 | 20.19 | 20.80 | 21.84 |
| Transcriptionist | 16.30 | 17.12 | 17.99 | 18.87 | 19.81 | 20.42 | 21.44 |
| Coder I | 16.30 | 17.12 | 17.99 | 18.87 | 19.81 | 20.42 | 21.44 |
| Coder II | 20.30 | 20.64 | 21.04 | 21.47 | 21.87 | 22.47 | 23.59 |
| Clerk VI | 15.80 | 16.62 | 17.44 | 18.35 | 19.24 | 19.80 | 20.79 |
| Clerk V | 14.81 | 15.56 | 16.33 | 17.13 | 18.00 | 18.51 | 19.44 |
| Clerk IV | 13.77 | 14.45 | 15.17 | 15.93 | 16.72 | 17.24 | 18.10 |
| Clerk III | 13.15 | 13.78 | 14.49 | 15.22 | 15.98 | 16.44 | 17.26 |
| Clerk II | 12.14 | 12.72 | 13.36 | 14.03 | 14.72 | 15.17 | 15.93 |

# APPENDIX B

## I. LVN II CLINICAL LADDER REVIEW BOARD

The Licensed Vocational Nurse II role offers recognition and promotional opportunities for LVNs who meet the standards of clinical excellence within the LVN scope of practice. The role is designed for LVNs who have significant experience within their assigned area of nursing practice.

The primary function of the Licensed Vocational Nurse II is bedside nursing. He/she demonstrates clinical proficiency by contributing to and following a plan of patient care in collaboration with a Registered Nurse. This highly motivated member of the St. Luke's Hospital health care team possesses excellent communication skills as evidenced by his/her positive and effective interactions with families and co-workers.

A. An LVN II classification shall be added to the Agreement.

B. The LVN II classification shall be implemented by the Hospital in accordance with its own criteria, application, evaluation, selection, continued eligibility and other procedures as developed by Nursing Administration and a joint LVN/Staff Nurse Committee.

C. The LVN II selection board process will meet twice a year. Maintenance of LVN II status will be evaluated annually.

D. Any reclassification from LVN II to LVN shall be without loss of seniority or benefits.

E. The LVN II will be compensated at 5% above the LVN rate.

F. None of the content of items A. through E. of this LVN Clinical Ladder Proposal are subject to Article XI, Grievance Procedure.

## II. LPT II CLINICAL LADDER REVIEW BOARD

The Licensed Psychiatric Tech II role offers recognition and promotional opportunities for LPTs who meet the standards of clinical excellence within the LPT scope of practice. The role is designed for LPTs who have significant experience within their assigned area of nursing practice.

The primary function of the Licensed Psychiatric Tech II is bedside nursing. He/she demonstrates clinical proficiency by contributing to and following a plan of patient care in collaboration with a Registered Nurse. This highly motivated member of the St. Luke's Hospital health care team possesses excellent communication skills as evidenced by his/her positive and effective interactions with families and co-workers.

A. An LPT II classification shall be added to the Agreement.

B. The LPT II classification shall be implemented by the Hospital in accordance with its own criteria, application, evaluation, selection, continued eligibility and other procedures as developed by Nursing Administration and the Clinical Ladder Review Committee.

C. The LPT II selection board process will meet twice a year. Maintenance of LPT II status will be evaluated annually.

D. Any reclassification from LPT II to LPT shall be without loss of seniority or benefits.

E. The LPT II will be compensated at 5% above the LPT rate.

F. None of the content of items A. through E of this LPT Clinical Ladder Proposal are subject to Article XI, Grievance Procedure.

## III. SURGICAL TECHNICIAN CLINICAL LADDER

It is agreed by the parties that within ninety (90) days of the ratification of the current agreement, a Surgical Technician Clinical Ladder Committee will be established, which will be composed of an equal number of Union representatives and Hospital representatives (not to exceed four [4] for each side). Union representatives, other than the Union Field Representative, will be Surgical Technicians.

Meetings of the Committee may be held at the request of either party.

Issues discussed by the Committee will not be subject to the grievance and arbitration provisions of this Agreement and decisions by the Committee regarding the following issues will be by mutual agreement:

Surgical Technician Clinical Ladder

A. Senior Surgical Technician classification shall be added to the Agreement

B. The Senior Surgical Technician classification shall be implemented by the Hospital in accordance with its own criteria, application, evaluation, selection, continued eligibility and other procedures as developed by Nursing Administration and the Clinical Ladder Review Committee.

C. The Senior Surgical Technician Selection Board will meet twice a year. Maintenance of Senior Surgical Technician status will be evaluated annually.

D. Any reclassification from Senior Surgical Technician to Surgical Technician shall be without loss of seniority or benefits.

E. The Hospital and the Union shall meet to determine the appropriate compensation for a Senior Surgical Technician.

F. None of the content of items A through F of this Surgical Technician Clinical Ladder proposal are subject to Article XI, Grievance Procedure, of the Agreement.

90

## APPENDIX C - PBX SUPERVISOR

The Hospital and the Union agree that the current PBX Supervisor will not be required to join the Union, but will be grandfathered as a working Supervisor during her remaining tenure as such.

Upon such time that said individual either terminates employment with St. Luke's Hospital or changes job status, the Hospital will not replace the position with another Working Supervisor.

## APPENDIX D - TWELVE (12) HOUR SHIFTS

The Hospital and the Union agree to meet, upon request, to discuss and establish a ten (10) or twelve (12) hour shift, where the majority of the employees in that department or unit or the Hospital desires such a schedule. Factors such as increased efficiency, interruption of services, scheduling and coverage issues will all be considered as well as the needs of the employees in that department or unit.

91

# APPENDIX E – HEALTH PLAN SCHEDULE OF BENEFITS

a. St. Luke's Hospital Plan (self-insured plan)

b. Providers: St. Luke's/Selected Hospitals/Other

c. Selected Hospitals include: Alta Bates, John Muir, CPMC (California Campus) and Seton

| Benefit: | Associated Cost |
|---|---|
| Calendar Year Deductible: | |
| a. Individual | a. None |
| b. Family | b. None |
| Annual Out-of-Pocket Maximum: | |
| a. Per individual | a. $3,100 |
| b. Per family | b. Not applicable |
| Lifetime Medical Benefit Maximum | $1,000,000 |
| Lifetime Inpatient Mental/Nervous | $30,000 |
| a. Office Visit | a. $8/n.a./50% |
| b. Maternity Care | b. $0/n.a./50% |
| c. Well Baby Care | c. $8/n.a./50% |
| d. Adolescent Care | d. Not covered |
| e. Adult Routine Physical [one [1] every other year] | e. $10/50% |
| Inpatient Hospitalization | $0/50%/50% |
| Lab & X-ray | $0/50%/50% |
| Emergency: | |
| a. Life Threatening | a. $0/$0/$0 |

| | |
|---|---|
| b. Urgent | b. $25/$35/$35 |
| c. Non-emergency | c. 50%/$35 + 50%/$35 + 50% |
| Outpatient Physical Therapy | $5/50%/50% |
| Vision: | |
| a. Eye Exam/refraction | a. Reimbursed up to $40 |
| b. Lenses | b. Lenses reimbursed up to $65 - $450, depending on type of lens. Contacts reimbursed up to $55 each (cosmetic) and up to $85 each (medically necessary) |
| Mental Health | |
| a. Inpatient - Annual Maximum | a. Up to $225 per day for an annual maximum of 45 days |
| b. Outpatient – Annual Maximum | b. $1,000 |
| Alcohol/Chemical Dependency | |
| a. Inpatient | a. Detox covered up to 4 patient days per year |
| b. Outpatient | b. $5 co-pay (1-5 visits) $10 co-pay (6-10 visits) |
| Home Health Care Visits | 90 visits annual maximum benefit (180 visits/lifetime) |
| Chiropractic Care/Acupuncture | 20 visits per year $15 co-pay per visit. Acupuncture: All services authorized through the integrative center for culture and healing and require physician pre-authorization |

| Prescription Drugs – In House | | As of 7/02 | As of 7/03 | Prescription Drugs – (Not St. Luke's) | As of 7/02 | As of 7/03 |
|---|---|---|---|---|---|---|
| Formulary Generic | Co-pay | $0 | $2 | Longs or Walgreens | $5 | $7 |
| Formulary Brand | Co-pay | $5 | $5 | Longs or Walgreens | $10 | $10 |
| Formulary Non-Preferred | Co-pay | $10 | $10 | Longs or Walgreens | $15 | $15 |
| Not available | Employee pays 100% of cost | Maintenance drugs only/ x3 co-pays, as applicable | | Longs or Walgreens | Employee pays 100% of cost | |

94

# APPENDIX F - PENSION

a. During the term of the Agreement, at the request of St. Luke's, Local 250 agrees to discuss modifications to the pension plan. Any changes must be mutually agreed upon by both parties.

b. The pension benefit improvement is a one (1) time increase in the total monthly pension that an individual has earned through December 31, 2000. The increase is equal to the following percentage (Note: The increase is only given to those individuals who had at least one [1] hour of service at St. Luke's Hospital during the calendar year 2000, i.e. retirees and former employees who didn't have an hour of service with the Hospital in 2000 do not get the increase.):

| Years of Benefit Service | Percent of Benefit Increase | Years of Benefit Service | Percent of Benefit Increase | Years of Benefit Service | Percent of Benefit Increase |
|---|---|---|---|---|---|
| Less than 10 | 5% | 16 | 22% | 24 | 38% |
| 10 | 10% | 17 | 24% | 25 | 40% |
| 11 | 12% | 18 | 26% | 26 | 42% |
| 12 | 14% | 19 | 28% | 27 | 44% |
| 13 | 16% | 20 | 30% | 28 | 46% |
| 14 | 18% | 21 | 32% | 29 | 48% |
| 15 | 20% | 22 | 34% | 30 or more | 50% |
| | | 23 | 36% | | |

95

## APPENDIX G – LIST OF NON-SUPERVISORY DEPARTMENTS FOR APPLICATION OF ARTICLE I SECTION 3 OF THE AGREEMENT.

The following is a list of non-supervisory departments who would potentially be eligible for union representation should the topic of organizing surface:

| 1. Pharmacy Tech | 4. EKG Tech | 7. X-ray Tech |
| 2. Ultra-Sound Tech | 5. ECHO Tech. | 8. Sr.Radiology Tech |
| 3. P.T. Assistant | 6. Nuclear Med. Tech | |

## APPENDIX H – MHW TRAINING

Within sixty (60) days of ratification the Employer will implement a voluntary training program to which employees will be trained to be MHWs. The employees will be paid MHW wages when working in the Psych Unit after they have completed Orientation and achieved full competency. If no program has begun with sixty (60) days, despite having qualified candidates, any employee floated to Psych will be paid MHW wages.

## APPENDIX I – TRANSCRIPTION

Within a month of the ratification of this Agreement, the Hospital and the Union will bargain over establishing standards for transcriptionists that will include the needs of the medical staff and the requirements of State and Federal regulatory agencies. Once the Hospital has purchased new equipment, the Union and the Hospital will renew bargaining to determine any new changes in standards. Any

96

discussions will include input from the transcriptionists.

The Hospital may subcontract work on a temporary basis of positions in Transcription that the Hospital has, in good faith, been unable to fill. The Union understands that temporary basis can mean in excess of one (1) year or more.

## APPENDIX J – FLOATING POLICY

Purpose. The Float Procedure has been designated to provide adequate, safe nursing care to the patients and to accommodate the needs of the nursing staff whose varied skills are required to work in multiple environments.

Guidelines.

1. All Local 250 members float to every unit.

2. If an employee wants to make him/herself available for an extra day, she/he must be available to work in any hospital unit and cannot specify where he/she wants to work.

3. Per Diem, Registry or individuals working an extra shift cannot bump regular staff off their home unit.

4. There are no deals made by staffing or facilitators.

5. The staffing office will not answer questions about staffing assignments prior to the start of the shift.

6. Once an employee has worked in an assignment for one (1) hour or more, she/he will not be floated to another unit.

Order of Floating:

1. Registry
2. Per Diem
3. Float Pool
4. Individuals working extra shifts.

97

5. Regular staff working a regular (not extra) day by seniority.

Orientation. Orientation to all units to float is required for employment and will be offered by the Unit Facilitator, as needed. If an employee feels that he/she requires additional orientation, he/she should contact his/her facilitator in writing and identify the areas that he/she is not currently oriented or competent to work in.

98

## NOTICE OF LOCAL 250 GRIEVANCE

Grievance initiated by: _Union Representative_          _St. Luke's Hospital_
                              Shop Steward                      Facility

Grievance filed on behalf of: _All Affected Inpatient Pharmacy_ ( )
                                    Aggrieved                      Work Phone

Home address: _____ ( )
                  Street          City        Zip    Home Phone

Date of event causing grievance: _9 / 29 / 06_

Grievance submitted to: _Wlene Chilson_     Date: _10 / 11 / 06_
                            Supervisor

Brief description of Grievance(s): _Subcontracting, failure to recognize_
_bargaining unit; failure to make every effort to avoid layoffs,_
_successorship_

Applicable contract provisions include, but are not limited to, paragraphs:
_Article I section1, Article XIV_

Requested Resolution: _no subcontracting, employer make every effort to_
_avoid layoff, employer recognize bargaining unit, successorship_
_all affected employees made whole_

Pursuant to the employer's duty to bargain in good faith, the Union hereby requests the following information and/or documents which are necessary and relevant to process this grievance:
_request to follow_

---

**SEIU 250**

Health Care
Workers Union
Stronger Together
www.seiu250.org

**SUPERVISOR:** This is a grievance filed in accordance with the Collective Bargaining Agreement. This notice of Grievance requires a discussion and/or Step 1 meeting with you to discuss the complaint(s) and attempt to resolve the grievance(s). Please contact the Shop Steward named above at Extension _____ to schedule a date and time to meet.

Original: Supervisor       Copy: Steward       Copy: Union Field Representative



_Exhibit B_

# EXHIBIT B

1  F. CURT KIRSCHNER, JR. (S.B. #122502)
   CHRISTOPHER T. SCANLAN (S.B. #211724)
2  ERENDIRA E. RUBIN (S.B. #247299)
   O'MELVENY & MYERS LLP
3  Embarcadero Center West
   275 Battery Street
4  San Francisco, CA  94111-3344
   Telephone:  (415) 984-8700
5  Facsimile:  (415) 984-8701

6  Attorneys for Respondent
   St. Luke's Hospital

7

FILED

San Francisco ... Superior Court

NOV 1 3 2007

GORDON PARK-LI, Clerk
BY: _____ WES PY RAMIREZ
                    Clerk

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            IN AND FOR THE COUNTY OF SAN FRANCISCO

10

11  SEIU UNITED HEALTHCARE              Case No. CPF-07-507800
    WORKERS – WEST,
12                                      RESPONSE (ANSWER) BY
                 Petitioner,            RESPONDENT ST. LUKE'S
13                                      HOSPITAL TO PETITIONER'S
         v.                             UNVERIFIED PETITION TO
14                                      COMPEL ARBITRATION
    ST. LUKE'S HOSPITAL                 [CCP § 1290.6]
15
                 Respondent.
16

17

18

19       Respondent St. Luke's Hospital ("St. Luke's" or "Respondent"), by and through its

20  undersigned counsel, hereby responds to the Petition to Compel Arbitration (the

21  "Petition") of SEIU United Healthcare Workers – West (the "Union" or "Petitioner"),

22  filed on November 2, 2007, as follows:

23                                RESPONSE

24       1.      St. Luke's denies knowledge or information sufficient to form a belief as to

25  the truth or falsity of the allegations contained in paragraph 1 of the Petition, except St.

26  Luke's admits that Petitioner is a "labor organization" within the meaning of Section 2 of

27  the National Labor Relations Act, codified at 29 U.S.C. § 152(5).

28       2.      St. Luke's admits the allegations contained in paragraph 2 of the Petition,

ST. LUKE'S RESPONSE TO
PETITION TO COMPEL ARBITRATION

1    except that the short title of the federal statute cited by Petitioner should be the National

2    Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, and not the Labor Management Relations

3    Act of 1947.

4        3.        St. Luke's admits the allegations contained in paragraph 3 of the Petition to

5    the extent that it accurately recites the terms of the parties' agreement.

6        4.        St. Luke's denies knowledge or information sufficient to form a belief as to

7    the truth or falsity of the allegations contained in paragraph 4 of the Petition and on that

8    basis St. Luke's denies those allegations, except St. Luke's admits that a grievance

9    purportedly filed on behalf of "All Affected Inpatient Pharmacy" appears to be the subject

10    of the Petition.

11        5.        St. Luke's denies the allegations in paragraph 5 of the Petition to the extent

12    that the allegation forecloses the Parties' agreement under section 17.5.2 of the Tentative

13    Agreement entered into on November 10, 2005 that disputes may also be processed

14    through the Staffing Committee.

15        6.        St. Luke's denies the allegations in paragraph 6 of the Petition.

16        7.        St. Luke's denies the allegations in paragraph 7 of the Petition.

17                **RESPONSE TO PETITIONER'S PRAYER FOR RELIEF**

18        8.        Petitioner's Prayer for Relief is not an allegation and therefore no

19    responsive pleading is required.  Should a response be deemed required, St. Luke's denies

20    each and every allegation in the Prayer for Relief.

21                            **AFFIRMATIVE DEFENSES**

22        9.        The Union's petition fails to state facts sufficient to constitute an

23    appropriate petition to compel arbitration.

24        10.        The Union's petition is barred, in whole or in part, by the Union's failure to

25    exhaust contractual remedies.

26        11.        The Union's petition is barred, in whole or in part, by the defense of waiver.

27        12.        The Union's petition is barred, in whole or in part, by the defense of laches.

28        13.        The Union's petition is barred, in whole or in part, by the defense of unclean

ST. LUKE'S RESPONSE TO
                        PETITION TO COMPEL ARBITRATION

1    hands.

2        14.    The Union's petition is barred, in whole or in part, by the Union's

3    repudiation of the collective bargaining agreement.

4        15.    The Union's petition is barred, in whole or in part, because the Respondent

5    acted at all times in good faith and did not induce, assist, participate, or engage in any act

6    and/or omission that constitutes a violation of its contractual duty to arbitrate grievances.

7

8                                    * * * * *

9        WHEREFORE, St. Luke's hereby requests dismissal of the Petition with prejudice

10   and an award for St. Luke's reasonable costs and disbursements, together with such other

11   and further relief that the Court may deem just and proper.

12   Dated:   November 13, 2007.

13                                F. CURT KIRSCHNER, JR.
                                  CHRISTOPHER T. SCANLAN
14                                ERENDIRA E. RUBIN
                                  O'MELVENY & MYERS LLP
15

16                                By: *Eréndira E. Rubin*
17                                    Erendira E. Rubin
                                      Attorneys for Respondent
18                                    St. Luke's Hospital

19

20

21

22

23

24

25

26

27

28

                                              ST. LUKE'S RESPONSE TO
                                              PETITION TO COMPEL ARBITRATION

1

## PROOF OF SERVICE BY MAIL

2      I am over the age of eighteen years and not a party to the within action. I

3  am employed in the county where the service described below occurred. My business

4  address is 2765 Sand Hill Road, Menlo Park, California 94025. I am readily familiar

5  with this firm's practice for collection and processing of correspondence for mailing with

6  the United States Postal Service. In the ordinary course of business, correspondence

7  collected from me would be processed on the same day, with postage thereon fully

8  prepaid and placed for deposit that day with the United States Postal Service. On

9  November 13, 2007, I served the following:

10  **RESPONSE (ANSWER) BY RESPONDENT ST. LUKE'S HOSPITAL TO**
   **PETITIONER'S UNVERIFIED PETITION TO COMPEL ARBITRATION**
11  **[CCP § 1290.6]**

12  by putting a true and correct copy thereof in a sealed envelope, with postage fully prepaid,
   and placing the envelope for collection and mailing today with the United States Postal
13  Service in accordance with the firm's ordinary business practices, addressed as follows:

14

15                  William A. Sokol, Esq.
16                  Bruce Harland, Esq.
                Weinberg, Roger & Rosenfeld
17            1001 Marina Village Parkway, Suite 200
                  Alameda, CA 94501-1091
18

19

20      Executed on November 13, 2007, at Menlo Park, California.

21      I declare under penalty of perjury under the laws of the State of California

22  that the above is true and correct.

23

24

25                                          Lupe C. Austin

26  MP1:1008960.1

27

28

ST. LUKE'S RESPONSE TO
PETITION TO COMPEL ARBITRATION